This action was brought to restrain the defendant from operating its road over and upon certain lands lying below high-water mark in the Hudson river, to which the plaintiffs claim title through letters-patent issued to them by the commissioners of the land office of the state.
It appears, from the findings of the trial court, that the plaintiffs own certain uplands situated in the village of Fishkill Landing, in Dutchess county, which border upon the easterly shore of the Hudson river, and that in the year 1881 the defendant built a portion of its railroad in the waters of the river, in front of the above-mentioned uplands and between said lands and the channel of the river, and continued to use *Page 426 
and operate its railroad upon said land up to the commencement of this action; that on March 3, 1885, the commissioners of the land office granted and conveyed to the plaintiffs a certain lot of land under the waters of the river, extending north and south along the whole water front of plaintiffs' uplands, and westward into the river, for a considerable distance beyond the line of the defendant's road; that in or about the year 1848 James Rumsey and Harriet Gill, the plaintiffs' ancestors, through whom they derived their title to the uplands aforesaid, executed and delivered a warranty deed to the Hudson River Railroad Company for a strip of land, consisting, in part, of land above high-water mark and partly of land under the water of the river, retaining, however, a large part of the original shore line. Upon the strip of land described in said deed the said railroad company constructed a solid embankment, several feet above high-water mark of said river, for their line of railway, which embankment has ever since stood and still stands directly between plaintiffs' uplands and the channel of the river, but a considerable distance outside of the original shore line. A culvert or opening was built in said embankment, through which the waters of the river flow into the bay between the said embankment and the original shore line, and the tide rises and falls upon plaintiffs' upland aforesaid.
After the construction of its said road, and in or about the year 1868, the Hudson River Railroad Company obtained from the commissioners of the land office a grant of the land under water covered by its said roadway, and extending westward into the river two hundred feet from the center line of its said road. The line of defendant's road is partly within the lands granted to the Hudson River Railroad Company as aforesaid, and partly without said company's lands, and within the lines of plaintiffs' grant. As a conclusion of law, the trial court decided that the plaintiffs were not the proprietors of any lands adjacent to the land under water west of the Hudson River Railroad, but that said railroad company was the adjacent proprietor at said point, within the meaning of the *Page 427 
statute which forbids the commissioners of the land office from making water grants to any person except the proprietor of the adjacent land; and, consequently, the grant to the plaintiffs, so far as it purports to convey lands west of the railroad, was void, and dismissed the complaint. The judgment entered upon such dismissal having been affirmed by the General Term the plaintiffs appeal to this court.
The powers of the commissioners of the land office are defined by the Constitution to be "such as now are or hereafter may be prescribed by law," and may be found in 1 Revised Statutes (7th ed.) page 573. By section 67 of the statute referred to, they may grant so much of the lands under the waters of the navigable rivers and lakes as they shall deem necessary to promote the commerce of the state, etc., but the statute provides: "No such grant shall be made to any person other than the proprietor of the adjacent lands, and any such grant that shall be made to any other person shall be void." Unless, therefore, the plaintiffs have shown themselves to be the owners of the lands adjacent to the lands described in the letters patent to them, the grant was not within the jurisdiction of the commissioners of the land office and is void.
From the earliest history of the state its policy has been to grant the lands under water along the shores of the navigable rivers and lakes, for the purpose of promoting the commerce of the state.
At the ninth session of the legislature, the commissioners of the land office were authorized to grant so much of the lands under the waters of the navigable rivers as they should deem necessary to promote the commerce of the state, provided that no such grant should be made to any person other than the proprietor or proprietors of the adjacent lands. (Chap. 67, Laws of 1786.) The policy thus indicated has never been departed from, and in all subsequent statutes upon this subject words of the same meaning and import are to be found.
At the time of the enactment of these laws the expression "proprietors of the adjacent land" referred to a distinct class *Page 428 
of land-owners and included all whose uplands were bounded by the shores of the navigable rivers and lakes. All such had ready access to the waters over and from their own lands, and grants of the land below high-water mark were made for the purpose of erecting thereon docks and wharves from which commerce upon the water could be carried on. In confining the authority of the commissioners to make grants to the upland proprietor, the state not only recognized the right of the land-owner to have access from his own land to the water, but probably adopted the most economical way of promoting intercourse and building up trade and commerce between its different sections.
The upland would furnish materials out of which to construct the necessary docks upon the river, and over it there would be ready access to the surrounding country. For the purpose of making the necessary structures and improvements on the water front, and also for the purpose of collecting the products of the surrounding country and distributing the merchandise carried on the water, ownership of the upland would, therefore, in most cases, be a necessity to the dock owner.
The same class of proprietors still exist, and it is not perceived but that the reason for confining the grants to such proprietors is as potent at the present time as before the construction of a railroad along the east shore of the river. As I have already stated, the grants were limited to the owners of the adjacent upland. In this case the railroad is not an owner of the upland. Its road is constructed through the waters of the river some distance from the shore, leaving a bay of considerable size between the railroad embankment and the original shore line. Into this bay the tide ebbs and flows, and the plaintiffs' lands are washed by the waters of the river. The plaintiffs come, therefore, directly within the class of persons indicated by the statute to whom grants of land under water may be made. But it is very plain that no grant to the plaintiffs could promote the commerce of the state upon the river, unless it included the land west of the railroad, upon which to construct docks and the right to cross the railroad *Page 429 
tracks. A grant, therefore, that did not include land west of the railroad would be ineffectual to carry out the only purpose for which the state has authorized such conveyance to be made. The important question, therefore, is, can the railroad company be regarded, within the meaning of the statutes upon the subject of water grants, as an "adjacent owner" to whom the commissioners of the land office could grant lands under water for the promotion of commerce upon the river. It is very clear, I think, that it cannot. A railroad corporation has no capacity to acquire lands for any purpose except such as is defined in its charter. It may take and hold lands for railroad purposes, but it is not necessary to cite authorities to show that it could engage in no business, except such as would be incidental to the railroad business, and come plainly within the scope of its charter. Being a creature of law, it possesses those properties only which its charter confers upon it, either expressly or as incidental to its existence. It is not important to determine what estate the railroad company took in the land acquired for the construction of its road. It may be conceded to be a fee. The statute makes it such. The more pertinent inquiry is, what capacity had it to deal with the lands it acquired? If that capacity was a general one and equal to that possessed by a natural person, there would be some ground to argue that it was an "adjacent owner" within the meaning of the statutes relating to water grants. But if it was, as I have stated it to be, a limited one, and the corporation could not make use of the lands for the purpose of promoting the commerce of the state upon the river, then it does not come within the class of persons named by said acts, and could not be a grantee of state lands for the purposes named in the statutes.
The question presented here is not like the one decided inGould v. Hudson River Railroad (6 N.Y. 522.) That was an action for damages claimed to have been sustained by the plaintiff by reason of being deprived of access to the channel of the river with boats and vessel from his farm. The case was decided upon the authority of Lansing v. Smith (4 Wend. 9), *Page 430 
and did not touch the validity of a grant of lands under water; and nothing is said in that case from which it can be determined what the court would have decided as to the validity of such a grant had one been made to the plaintiff. Nor is there anything in Langdon v. Mayor, etc. (93 N.Y. 29) applicable to the question involved in this appeal. What the court decided in that case was, that the plaintiff had an easement for passage to his wharf over lands of the city under water, lying outside of the wharf, and that the legislature could not, and, by the statutes under which the city was acting, had not authorized a destruction of such easement without compensation to the owner. In this case we are concerned solely with the question, whether the plaintiffs were, at the time of the grant to them from the commissioners of the land office, owners of the uplands adjacent to the land under water described in said grant, and the solution of this question depends upon the interpretation of the statutes relating to such grants. Kingsland v. Mayor, etc. (110 N.Y. 569) andWilliams v. Mayor, etc. (105 id. 419) are for like reasons inapplicable to the question under discussion.
If the Hudson River Railroad Company held the land in front of plaintiffs' property, for the purpose of the erection of wharfs and docks thereon, to which access by the river was necessary (and many such cases would doubtless occur in the ordinary conduct of the railroad business) then an easement over the lands of the state under water for the purposes of access to such docks would be implied, and Langdon v. Mayor, etc., and kindred cases would have some application.
But all such cases are provided for by the statutes relating to water grants, which require ample notice to be given of the application therefor to the commissioners of the land office, so that all parties whose interests are likely to be affected may be heard before the commissioners and their rights protected. The commissioners are empowered by the General Railroad Law (Chap. 140, Laws of 1850, §§ 25-49), to make grants of state lands to railroad corporations for railroad purposes. This includes power to grant lands under water for the erection of *Page 431 
docks necessary to the transaction of the company's business. (In re N.Y.C. H.R.R.R. Co., 77 N.Y. 248.) They are also empowered to grant lands under water for the purpose of promoting commerce on the water. The whole subject of granting state lands for the purposes named is, therefore, committed to the judgment of the commissioners, to be exercised under ample notice to all parties interested. And I cannot see that there is likely to be any conflict of titles or that the rights of all persons are not fully protected.
It is sufficient to say, however, in this case, that there is no claim that the railroad company acquired or used its land for any purpose except the construction thereon of its road bed; and the ownership of lands used solely for that purpose does not constitute the railroad company an adjacent owner within the meaning of the statute relating to grants of lands under water. Nor does it appear that the Hudson River Railroad Company complain that the plaintiffs' grant is in violation of any of its rights, and if it is, such violations may very well be left to be remedied at the suit of that company.
But we think that the legislature have recognized the authority as existing in the commissioners of the land office to grant land under the water of the river lying outside of the railroad to the upland proprietor.
Chapter 283 of the Laws of 1850 provides that the commissioners shall make no grants that will interfere with the rights of the Hudson River Railroad Company. This act was passed after the general railroad law and after the construction of the Hudson River Railroad, and can have no application to grants made to anyone, except an owner whose shore line is east of the railroad, as only by such a grant could there possibly be any interference with the railroad company's rights. This statute seems to contemplate a grant of land under water west of the railroad to a proprietor whose upland is east of the railroad; that would be valid if the railroad company's rights were protected, and the power to make such grants is, therefore, implied.
If we turn now to the consideration of the statutes of the state *Page 432 
which created the Hudson River Railroad Company, and authorized the construction of the railroad, it will appear, I think, that they are in harmony with the policy of the state with respect to granting lands under water for the promotion of commerce, and that the intent of the legislature was, so far as it was possible, to protect the upland owners along the east shore of the river in their access to the water and maintain their rights in the river unimpaired by the construction of the railroad. By section 15, chapter 216, Laws of 1846, said company was required to erect draw-bridges over the navigable streams and inlets crossed by its road, so as to admit the passage of vessels adapted to the navigation of such streams and of the river. In crossing bays of the river it was to construct bridges so as to admit of the passage of vessels to and from such bays; docks and wharves which were cut off from the river by said railroad were to be extended and improved so as to be restored to their former usefulness, and owners thereof were authorized to occupy the river front outside of the railroad for the erection and use of wharves and docks. By section 16, owners of land over which said railroad was constructed were given the right to cross the same, at some convenient place, for the purpose of managing their farms, and in all cases where the railroad passed between such lands and the usual place of access to the river and could not be conveniently crossed by reason of high embankments, deep cuts or otherwise, said company was required to construct and maintain convenient roads or passes for the passage of persons, cattle, carriages and teams, and give to them their usual access to the river.
Thus adequate provision was made to give to every owner of lands, bordering upon the river, easy access to the water; and the intention of the legislature appears to have been that the construction and maintenance of the railroad should interfere as little as possible with the rights of the riparian owner. In view of these provisions, which were intended to preserve to the upland proprietor his access to the river, we do not think that the creation of a railroad corporation, with authority to acquire lands and construct a railroad along the east *Page 433 
shore of the river, can be said to have changed the policy of the state with reference to the promotion of commerce upon the river, or deprived the commissioners of the land office of the power to make grants of land under water for such purpose to the owner of the uplands.
The laws upon the subject of these grants should be read in connection with the provision of the charter of the railroad company, and should be construed in the light of the purpose for which they were enacted; and, so construed, there is no difficulty in upholding all the rights, powers and privileges which the state intended to confer upon the railroad company, and at the same time give effect in all proper cases to grants of land under water made by the commissioners of the land office outside of the railroad company's land.
The grant to the plaintiffs expressly reserved and excepted from the lands conveyed the rights of the Hudson River Railroad Company, and thus complies strictly with the statute of 1850, quoted above. We think the commissioners of the land office had power to make the grant and that it is valid.
The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.
All concur, except POTTER, J., dissenting.
Judgment reversed.