The New York Central and Hudson River Railroad Company, Appellant, *v.* Thomas Aldridge, Respondent.

Same, Appellant, *v.* Same et al., Respondents.

Same, Appellant, *v.* Same, Respondents.

Same, Appellant, *v.* Same, Respondents.

A patent for state lands under navigable waters, granted by the commissioners of the land office, which is not void on its face and so requires evidence *dehors* the instrument to show its invalidity, may only be assailed in a direct proceeding to review the action of the commissioners, or by an action in equity to set aside the patent.

The fact that the owner of land bounded by a navigable river has conveyed to a railroad company for the use of its road a strip of the land along the water front, over which its route runs, does not deprive him of the character of riparian owner, within the meaning of the statute in reference to grants of lands under water, nor does it give to the company that character; although the title granted to the company is a fee, it holds and can only use the land for the purposes of its road.

Neither the provision of the act of 1846 (Chap. 216, Laws of 1846) incorporating the H. R. R. Co. for the purpose of constructing a railroad along the east side of the Hudson river, nor the amendatory act of 1848 (Chap. 30, Laws of 1848) gave the corporation any title to lands belonging to the state, whether above or under the waters of the river; nor did the adopting a course or filing a map as prescribed give any such title. Said acts, at most, gave only an implied license to the company to build along the course selected; the title to lands of the state as well as those of individuals to be subsequently acquired.

The provision of said amendatory act (§ 5) giving to the directors of the company power to adopt a new and altered location for its road as a substitute for the original location, applies only to what is in reality an alteration and substitution; not to that which is a mere addition to the original location.

The H. R. R. Co. pursuant to said act of 1846, duly designated the line of its road, as it passed through the town of Fishkill, and filed the proper certificate thereof in the office of the county clerk; it obtained from owners of lands fronting on the river conveyances of a strip of land along the river over which the route ran, the eastern boundary of which was above high-water mark, thus taking in the river front. The deeds contained reservations of the grantors' rights to all land lying below high-water mark, except such portion as was included in the route as laid out and located. The grantors subsequently conveyed their remaining lands " excepting and reserving " the line of the railroad as then,

in use and occupation by the company. In 1867 the grantees made application to the commissioners of the land office for a grant of land under the river adjacent to the upland, which was opposed by the company; while the application was pending the company, assuming to act under the amendment of 1848, changed the westerly line of the road, as originally laid out over said lands, by carrying said line further west, in no other respect changing the original location. In 1869 the commissioners granted the said application and issued a patent to the applicants "subject to all rights and privileges in and to said premises," which said company had acquired under its charter. In 1873 said commissioners issued a patent to plaintiff, it having succeeded to the rights of the H. R. R. Co. in the strip of land under water included in the new westerly line. In an action of ejectment to recover said strip, *held*, that plaintiff acquired no title thereto either by the alleged alterations, or by said patent; that even if the patents so issued to the defendants were void because they were not the upland proprietors, this could not be urged in this action, as plaintiff could only succeed by showing title in itself.

Also *held*, that the patents so issued to defendants were valid; that neither the provision in said patents making the grants subject to the rights and privileges acquired by plaintiff, nor the provision of the Revised Statutes in reference to grants of land under water (1 R. S. 208, § 67) as amended in 1850 (Chap. 283, Laws of 1850), prohibiting the commissioners from making any grant interfering with the rights of said H. R. R. Co. affected their right to a patent, or the validity of those granted to them; also, that conceding the company had power to alter its course in the manner it assumed to do, this alteration did not affect the rights of the commissioners to make a grant to an upland proprietor of land included in the alteration.

(Argued May 24, 1892; decided October 4, 1892.)

Appeals from judgments of the General Term of the Supreme Court, in the second judicial department, entered upon orders made December 14, 1891, which affirmed judgments in favor of defendants entered upon decisions of the court on trial at Circuit without a jury.

The nature of these actions and the facts, so far as material, are stated in the opinion.

*Robert F. Wilkinson* for appellant. Under its amended locations of 1868, and its patent from the state, the plaintiff acquired by legislative grant a good, lawful and exclusive title

to all the lands embraced therein, which is paramount to the title of the defendant. (Laws of 1846, chap. 216, §§ 4, 10, 13, 15; Laws of 1848, chap. 30, §§ 1, 5; *Gould* v. *H. R. R. R. Co.*, 12 Barb. 616.) The patent to the defendant is void and never had any legal force or effect, because Aldridge, the grantee, never was the riparian owner of the lands above high-water mark adjacent to the grant. (Laws of 1850, chap. 283; Gould on Waters [2d ed.], § 148; *C. & S. L. R. R. Co.* v. *Valentine*, 19 Barb. 484; *In re W. S. & B. R. R. Co.*, 29 Hun, 269; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *Kerr* v. *W. S. Co.*, 18 N. Y. S. R. 63; 53 Hun, 634; *In re State Niagara Reservation*, 37 Hun, 537; *Ives* v. *Van Auken*, 34 Barb. 566.) Even if the defendant's grant of land under water could be upheld in any respect, which we deny, the state, by its grant of a part of the same lands to the plaintiff, in 1873, revoked *pro tanto* the grant to the defendant. (*Kerr* v. *W. S. Co.*, 18 N. Y. S. R. 70.)

*H. H. Hustis* for respondent. This being an action of ejectment, the plaintiff must prove a good title. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423.) The defendant has a perfect title to the land in question. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423.) In the case against Aldridge, Covert and others, the lands sought to be recovered under the grant to the New York Central and Hudson River Railroad Company are lands under water, outside of adjacent uplands, which upland is between the Hudson river and the Hudson River railroad, which adjacent upland the railroad company never has had title to or possession of, and the statute declares such grant shall be void. (Laws of 1850, chap. 283.) The grant from the commissioners of the land office to Aldridge is a valid one for every part of the premises described therein (*K. I. Co.* v. *Shultz*, 26 N. Y. S. R. 852; *Nichols* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 131; *Towle* v. *Remsen*, 70 id. 303.)

Peckham, J. The plaintiff has brought these actions to recover the possession of certain lands in the town of Fishkill

and county of Dutchess, of which it claims to be the owner, and it alleges the defendant wrongfully withholds the same from it. The cases were tried at Poughkeepsie before one of the justices of the Supreme Court without a jury, and the court found that the plaintiff was not the owner of the lands, but that defendant was, and thereupon judgments were entered in favor of the defendant as owner and against the plaintiff for costs. These judgments were upon appeal affirmed by the General Term of the Second Department and from that affirmance the plaintiff has appealed to this court.

The land was, prior to the year 1846, under the waters of the Hudson river and on the east side thereof. The title to one portion of the adjacent upland was at that time in the executors of the will of John Van Vliet, deceased, and the title to the other portion was in one Isaac Brinkerhoff.

The Hudson River Railroad Company was incorporated by virtue of chapter 216 of the Laws of 1846, for the purpose of constructing a railroad along the east side of the Hudson river from New York to Albany. Pursuant to the provisions of law the New York Central Railroad Company and the Hudson River Railroad Company were duly consolidated in 1869, under the name as given in the title of this action and such corporation has succeeded to all the rights, powers and privileges of which the Hudson River Railroad Company was possessed. Pursuant to the provisions of section 4 of the act of 1846, above cited, examinations, surveys and maps were made in order to provide for the most advantageous line for the location of the road, and after such examinations and surveys were made the directors of the company duly designated the line for the road as it passed along through the town of Fishkill in the county of Dutchess, and the proper certificate thereof was duly filed in the office of the clerk of Dutchess county, as provided for by law. The statute provided further that this course so selected and certified should be the line on which the corporation should construct its road. The land in question after the course of the road had been duly selected and adopted, lay outside and

west of the west line of such course and under the waters of the Hudson river. The railroad company obtained the strip of land along and upon which it finally built its road by a conveyance from the executors of John Van Vliet, deceased, and from Isaac Brinkerhoff and wife, the executors owning the north and Brinkerhoff and wife the south portion of such strip.

By chapter 30 of the Laws of 1848, the legislature amended the act of 1846, and by section 5 of such amendment it gave power to the directors to adopt a new and altered location for the road if at any time they thought it best to adopt one in place and as a substitute for the old location, and a map of the course as altered was to be filed in accordance with the provisions of that section. The railroad company built and operated its road on the land conveyed to it by the executors of Van Vliet and by Brinkerhoff and wife and so continued for about twenty years without alteration or amendment of its line. After the expiration of that time and on the 30th of September, 1868, the company assumed under the amendment of 1848, above cited, to modify its location and alter its line and filed a map thereof as provided by law. The modification and alteration consisted simply in carrying or pushing its original westerly exterior line some distance further to the west. Subsequently and on the 10th of November, 1868, an additional alteration and modification of its westerly line was made by the company and a map thereof filed, by which that line was carried still further to the west. These so-called modifications and alterations of the westerly line of the location, course or route of the railroad would include the land in question, and the plaintiff claims title thereto under the provisions of its charter and amendments and also by virtue of a conveyance from the commissioners of the land office. Prior to this time the title to the lands was in the state.

We think the plaintiff acquired no title to the lands in question by reason of these alleged alterations.

By the original act of 1846 the railroad company was to adopt a certain line, course or way for the railroad, and such

as the directors should declare most advantageous, and this course so selected, the statute said should be the line on which the road should be built. The state, however, did not in any of the statutes relating to the railroad, convey any land to the company which belonged to the state, either above or under water. The act of 1846 gave no such title. Neither did section one or five of the amendment of 1848. The most that could be urged was perhaps a mere implied license to the company to build along the course selected, even though lands of the state were included therein. This gave no title to the land embraced in such course. The land was to be acquired subsequently.

As to lands belonging to individuals the company secured no title by selecting and adopting a course and filing a map. It still had to purchase such lands or else obtain them by the exercise of the right of eminent domain. There is no provision in the law which makes a different result where the lands belong to the state. Under the general railroad act of 1850, the commissioners of the land office are empowered by section 25 to grant to any railroad company formed under that act any land belonging to the people of the state which may be required for the purpose of the road, upon such terms as may be agreed on by them. And by section 49 of the same act all railroad companies within the state are granted all the powers and privileges contained in the act, so that plaintiff had the right thereunder to apply for a grant of land under water, belonging to the state, if the same were required for the purposes of its road, and upon terms to be agreed on between the company and the commissioners of the land office.

The fifteenth section of the act of 1846, incorporating the railroad company, contemplates the building of a bridge over the Spuyten Duyvel creek by the company, and also bridges over other creeks and navigable streams and inlets, and the act also assumes that the company will cross the bays along the river. But there is no grant by the state of any land under the water of these bays or inlets, and no title is conveyed by any statute that I have seen. The state has permitted the build-

ing of the road across these waters, and probably through its commissioners of the land office it has granted, in most instances, the title to such lands under water as were used by the company. There is nothing, however, in the statutes themselves which operates as a transfer of the title. When the alterations made under the act of 1848 called for lands belonging to the state, the title thereto was not conveyed by the making of such alterations or by the filing of a map thereof. In addition to this view it would seem that the act of 1848 applies only to what is in reality an alteration, and not to that which is a mere addition to the original location or course. The part added is not a new course, and is in no sense a substitute for the old one, as the statute unquestionably contemplates it should be. There are thus two difficulties with the plaintiff's contention as to the effect of the alleged alteration. The statute, in the first place, does not contemplate a mere addition where there is to be no alteration and substitution. In the next place, if the alteration claimed were within the purview of the statute, the company would thereby be clothed with a power to so locate its route, and the necessity would still remain of acquiring the land contained in the proposed alteration, either by purchase or condemnation, if from private individuals, or by grant if from the state.

It is too clear for more extended argument that the company acquired no title to the lands in question by reason of any assumed modification or alteration of its original course, and the filing of a map indicating such alteration.

The plaintiff, however, does not rely alone upon these alterations. On the 26th of December, 1873, the commissioners of the land office pursuant, as is stated, to section 25 of the General Railroad Act already referred to, granted to the plaintiff all the land under water embraced within the boundaries of its amended locations of 1868.

The plaintiff now claims that by virtue of the locations made by the railroad company in 1868, and of the grant from the commissioners of the land office in 1873, it has acquired title by legislative grant to the land in question and that such

title is paramount to that of the defendant. The decision of this question requires a statement of some additional facts.

The conveyances from the executors of Van Vliet and from Brinkerhoff and wife to the railroad company embraced a strip of land wide enough for its tracks to be laid on, and the eastern boundary of this strip was above high-water mark and ran along the front of the farm as it had been bounded by the river, thus taking in the front of the farm so bounded and thereby as is claimed wholly divesting the grantors of their character of riparian or adjacent owners.

It is through conveyances made by these grantors that the defendant claims title to the farm lands immediately east of the strip of land so granted to the company and it is by reason of such conveyances that the defendant claims to be owner of the adjacent uplands and hence a proper party to receive a grant from the state of the adjoining lands under water.

The deed from the executors to the railroad company contained this declaration : The said parties of the first part, however, hereby reserve to the estate of said John Van Vliet, deceased, and for the benefit thereof, all rights to all land lying below high-water mark of the Hudson river, except such portion as is taken for the use and occupation of said road as laid out and located as aforesaid and as particularly described in said map. The deed from Brinkerhoff and wife contained a similar declaration. Both deeds conveyed the respective lands to the company as a strip of land (using the language of the deed) through the lands and premises of the grantors, " as laid out and located as part of the route of the railroad as then located and more fully shown on the map annexed." The deed from the executors of Van Vliet, dated April 1, 1851, to defendant, was made " subject nevertheless and hereby especially excepting and reserving from the within described lot of land, the line of the Hudson River railroad as now in the use and occupation of the said Hudson River Railroad Company." The deed from Brinkerhoff and wife to defendant, and dated January 2, 1854, contained substantially the same exception. The defendant having thus become the

owner of the upland farm from which this strip was taken for the purposes of and by the railroad company, made application to the commissioners of the land office and filed his petition to them on the 14th of May, 1867, asking for a grant of land under water adjacent to his upland. This application would seem to have been opposed by the railroad company, and while it was pending before the commissioners, the company, on the 30th of September and the 10th of November, 1868, assumed to make the alterations in its course as already described.

On the 5th of May, 1869, the commissioners of the land office granted the application of the defendant and issued a patent to him for the lands under water which are the same lands embraced in the complaint herein. This patent was made "subject to all rights and privileges in and to said premises, or any part thereof, which the Hudson River Railroad Company may have acquired under its charter."

The patent from the commissioners of the land office to the plaintiff bears date December 26, 1873, more than four years subsequent to that of the defendant. The patent to the defendant being prior in point of time to that granted to plaintiff, would seem to make the title of the defendant the better of the two. The plaintiff answers this by stating that the defendant was not the owner of the adjoining upland, and consequently could not legally obtain a grant of these lands under water. It is further stated that the patent to defendant was granted expressly subject to all rights and privileges in and to the premises, or any part thereof, which the railroad had acquired under its charter. The act (Chapter 283 of the Laws of 1850), while providing for the granting of lands under water to the proprietor of the adjacent upland, also prohibits the commissioners from making any grant to interfere with the rights of the Hudson River Railroad Company. What those rights were must be determined. The simple claim that the patent of the defendant is void because he was not the upland proprietor (even if well founded in fact), could not be urged in this action, which is a purely legal

one, to obtain possession of real estate on the ground that plaintiff is the owner thereof. There is no fact set up in the complaint calling for the exercise of the equitable powers of the court, and the plaintiff must succeed by showing the better legal title.

It has been frequently held that a patent such as this, which is not void on its face, and which requires evidence *dehors* the instrument to show its invalidity, can only be assailed in a direct proceeding to review the action of the commissioners, or by an action in equity to set aside the patent. (*Blakeslee Co.* v. *Blakeslee's Sons Iron Works*, 129 N. Y. 155, and cases cited.)

The claim that defendant could not legally obtain a grant of these lands because not the owner of the upland, is thus disposed of, so far as this action is concerned.

We have seen that the plaintiff, by assuming to make the alterations alluded to, acquired no legal title to the land embraced within the limits of the proposed alteration. If it be conceded that the company had power to alter its course in the manner it assumed to do, the alteration did not in any manner affect the power of the commissioners of the land office to make a grant to an upland proprietor of the land under water, although it was included in the proposed alteration. A private owner of land prior to the purchase or condemnation thereof by a railroad would not be precluded from selling it because it was included within the terms of the original or altered location of the road; and the commissioners of the land office would not on that ground be prevented from granting such lands any more than an individual owner. The right is given to the commissioners by section 25 of the Railroad Act of 1850, to grant to the company any land belonging to the people of the state, which may be required for the use of the railroad, on such terms as may be agreed upon by them.

The fact that the lands are included in a proposed alteration of the course of the road may be evidence that they are needed by the company for its use, and when the company makes its application to the commissioners, if the lands still belong to

the state, the commissioners may grant them on terms to be agreed upon. There is nothing in the statute, however, which in any way affects the power of the commissioners to grant the lands to an upland proprietor after the proposed alteration has been surveyed and mapped, as well as before. If the commissioners have so conveyed, the company must negotiate with their grantee. If they have not conveyed, then the terms upon which the conveyance is to be made must be agreed upon between the commissioners and the company, and there is nothing in the statute from which it is to be inferred that the commissioners are under any obligation to convey for less than the value of the land, or upon any more favorable terms than they would impose upon the owner of the upland.

At the time of the granting of the patent to the defendant there were no rights or privileges, properly so called, vested in the company to which the patent to the defendant was subject. The right to apply to the commissioners for a grant of land belonging to the people was not touched. And the right to prevent the commissioners from granting land under water belonging to the people to the upland proprietor did not exist, and hence was not invaded. It is thus apparent that neither claim of the plaintiff is adequate as an answer to priority of the patent to the defendant.

As the case is here, however, we think it proper to decide the other question before us, whether the defendant at the time he took the grant from the commissioners was an upland owner within the meaning of the statute upon that subject. This point has been fully argued by counsel for the respective parties, and we think it should be met and decided now.

The case of *Rumsey* v. *Railroad Co.* (114 N. Y. 423) would seem to be nearly decisive of this. It is true there is some difference in the facts. In the *Rumsey* case the railroad was built partly on an embankment and partly on piles through the waters of the river and at some distance from the shore, and the tide ebbed and flowed in the intervening space. In this case the company received a grant which takes in a strip partly below and partly above high-water mark. This fact

the plaintiff urges is most material, for it is claimed it is
thereby made a riparian owner, and even if it could not itself
receive a grant as such (which it does not admit), it prevents
the owner of the land adjoining its own from being regarded
as a riparian owner, and hence prevents the granting of a
patent for lands under water to him. The fact that a small
quantity of water intervened between the shore and the rail-
road was not regarded in the *Rumsey* case as very material.
The fact was adverted to as bringing the plaintiff directly
within the class of persons indicated by the statute to whom
grants of land under water might be made. But the character
of the occupation of the land by the railroad company, and
whether it fairly could come within the meaning of the statute
as an owner of upland to whom a grant of adjacent lands
under water could be made, were the two main points dis-
cussed in the opinion, and upon which the strength of the rea-
soning was expended.

It was said that it could not be so regarded, and the reasons
given are, we think, quite satisfactory. It is unnecessary to
here repeat them. The counsel for the plaintiff does not
claim the lands by virtue of its own ownership of the upland,
but under a different statute. (General Railroad Act of 1850,
§§ 25, 49.) It is said, however, that by the deeds to the com-
pany the defendant's grantors destroyed their rights to a grant
and put such a grant forever beyond the reach either of them-
selves or their grantees, and that by virtue of such deeds they
vested the company with rights inconsistent with any right to
a grant on their part.

We have held that the power conferred by statute upon
the commissioners of the land office authorizes them to con-
vey lands under water to the owners of the adjacent uplands,
and that those owners, when they conveyed the uplands, could
not reserve the right to obtain a grant of the adjoining lands
under water. This was because the right or privilege con-
ferred by the statute is regarded as appurtenant to the upland
and vests in the owner thereof, and it cannot exist severed
from such ownership. (*Blakeslee Co.* v. *Blakeslee's Sons, etc.,
Co.*, 129 N. Y. 155.)

If the defendant's grantors by their deeds to the railroad company ceased to occupy the position of owners of the adjoining upland within the meaning of the statute, it would probably follow that the patent to the defendant was illegal. We do not, however, so regard the effect of these conveyances. The company took the lands for the use of its road and for that only. The deeds conveyed the land for that purpose only. At the time when the strip was conveyed to the company it had determined and located its line and the conveyance simply granted that which was included in such location. The company received and holds such land in fee simple by the voluntary grant of the former owners, and by the provisions of the statute it holds such real estate and can use it only for the purposes expressed in its charter, that of the maintenance, construction and accommodation of the railroad. For this purpose only the land can be used, and although the title granted to the company is a fee, yet as thus burdened and restricted, we think the grantor in conveying the strip did not thereby cease to be the owner of the upland within the meaning of the statute.

The conveyance to the railroad of the strip in question is in its effects entirely unlike the conveyance to a private individual in fee simple. In the latter case it may well be, the grantor even of so narrow a strip would lose his character of riparian owner and the grantee would acquire it. But when we consider the purpose of the conveyance to the railroad and the limitations to its use which the statute itself placed upon the company, it becomes entirely plain that the grantor ought not to lose his character of riparian owner where he retains the property immediately adjoining that which he conveys. (Chap. 216, Laws of 1846, § 9; ch. 30, Laws of 1848, § 9.) Grants of land under water were authorized to be made to the upland proprietor for the purpose of promoting the commerce of the state. A railroad company authorized only to do the business provided by its charter as a railroad, could certainly not within the meaning of the acts, promote the commerce of the state and hence would not

come within the class of persons named by the acts conferring power to convey lands under water for the purposes named therein. This has been so stated by Judge BROWN in his opinion in the *Rumsey* case and I fully concur therein.

The limitation placed by the statute upon the use of this strip of land by the railroad company, precludes the ordinary consequences from attaching to a conveyance in fee of land. The grantor still remains the owner of the adjoining upland within the meaning of the statute and he or his grantees are the persons to whom a grant of land under water may properly and legally be made. The defendant having received his patent prior to that granted to plaintiff, and the plaintiff then having no rights or privileges to which the defendant's patent was subject, it follows that a defense to this action was established.

Upon a review of the whole case we are persuaded the plaintiff failed to make out any title and that the defendant duly proved that he was himself the owner of the land in controversy. We have looked at all the questions presented and argued by plaintiff's counsel, and we think no error was committed on the trial and the judgment of the General Term should therefore be affirmed, with costs.

All concur.

Judgment affirmed.