In the Matter of the Application of the CITY OF BUF-
FALO, Respondent, to Acquire Lands Required for
Park Purposes.

THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD
COMPANY et al., Appellants; HENRY D. KIRKOVER
et al., Respondents.

Riparian rights — when land is lost by erosion of navigable
waters the land so lost and submerged returns to the ownership
of the state — when a railroad company acquires a right of way
between uplands and navigable waters, the owner of the upland
retains the riparian rights.

1. When land bordering a body of water is increased by accretion
the new land thus formed belongs to the owner of the upland to
which it attaches. Where the loss of the land occurs by avulsion,
defined as the sudden or violent action of the elements, the effect
and extent of which is perceptible while it is in progress, the
boundaries do not change. When the sea, lake or navigable stream
gradually and imperceptibly encroaches upon the land, the loss
falls upon the owner, and the land thus lost by erosion returns to
the ownership of the People by virtue of the sovereignty of the
state.

2. Where parcels, formerly upland, have been for many years
entirely submerged and surrounded by water as the result of the
gradual and imperceptible wearing away of the lands by the
natural action of the elements, in such a way that there is no pros-
pect of their restoration, the former owners having made no attempt
to stay the encroachment of the water or to reclaim the lost
land, and a railroad company has become the owner of the
adjoining upland with such riparian rights as attach to it, the own-
ership of such parcels is in the state by virtue of its sovereign title
to all lands below high-water mark in its navigable waters, and the
former owners have no right of reclamation. (*Mulry* v. *Norton*,
100 N. Y. 424, distinguished.)

3. When a railroad company acquires a right of way, which
intervenes between a navigable body of water and the adjacent
upland, the owner of the upland retains all the riparian rights
which he had before the railroad was built. In such a case the
railroad right of way, whether acquired by proceedings *in invitum*

or by deed in fee, is held only for the specific purposes served by the construction and operation of railroad tracks, and does not include the riparian rights which are incident to the ownership of uplands as that term is generally understood.

4. Query as to the nature and extent to which a railroad company is a riparian owner as to upland which it owns adjacent to its right of way and which is used for locomotive house, switching, storage and the like.

*Matter of City of Buffalo,* 148 App. Div. 384, modified.

(Argued May 2, 1912; decided October 22, 1912.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 29, 1911, which affirmed an order of Special Term confirming the report of commissioners in condemnation proceedings.

The facts, so far as material, are stated in the opinion.

*Alfred L. Becker* for New York Central and Hudson River Railroad Company, appellant. If the question whether the appellant owns any riparian rights was properly before the commissioners, they erred in their finding that it has none as appears by the undisputed facts, found fully by the commissioners. (*Philadelphia Co. v. Stimson,* 223 U. S. 605; *Wells v. Bailey,* 55 Conn. 292; *N. Y. C. & H. R. R. R. Co. v. Aldridge,* 135 N. Y. 83; *Saunders v. N. Y. C. & H. R. R. R. Co.,* 144 N. Y. 75; *Rumsey v. N. Y. & N. E. R. R. Co.,* 133 N. Y. 79; 114 N. Y. 423; *Hedges v. W. S. R. R. Co.,* 150 N. Y. 150; *Naylor v. N. Y. C. & H. R. R. R. Co.,* 119 App. Div. 24; *Matter of N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 248; *I. C. R. R. Co. v. Illinois,* 156 U. S. 387; *Garwood v. N. Y. C. & H. R. R. R. Co.,* 83 N. Y. 400; *Sandwich v. G. N. R. R. Co.,* L. R. [10 Ch. Div.] 707; *L. & N. R. R. Co. v. Beauchamp,* 40 S. W. Rep. 679; 19 Ky. L. R. 398.) The commissioners erred in their finding as to the interest acquired by the condemnation of this appellant's right of way. (L. 1850, ch. 140, § 19.)

*Alfred L. Becker* for Central Dock and Terminal Railway Company, appellant. Contrary to findings of the commissioners, the fee of Georgia street is not in the state of New York, but in the adjoining owners, both where such street as laid out is above water and where it is under water; and this appellant would have the right to occupy the portion of such street as laid out which is under water, with a dock. (*N. Y. C. & H. R. R. R. Co.* v. *City of Buffalo*, 200 N. Y. 113; *Gere* v. *McChesney*, 84 App. Div. 39; *S. S. Salt Co.* v. *R., W. & O. R. R. Co.*, 43 App. Div. 203; 168 N. Y. 650; *Paige* v. *Schenectady Ry. Co.*, 178 N. Y. 102; *Cheney* v. *S. O. & N. Y. R. R. Co.*, 8 App. Div. 620; 158 N. Y. 739; Lewis on Em. Dom. [3d ed.] §§ 698, 699; *Matter of N. Y., W. S. & B. R. R. Co.* v. *Le Fevre*, 27 Hun, 537; *Matter of City of New York*, 193 N. Y. 117; *Matter of Grade Crossing Commissioners*, 116 App. Div. 549.)

*Eugene Cary* for Edward P. Bowen et al., appellants, The outer portion of the lands of these appellants was under water at the time they were conveyed by the state, and, therefore, title to appellants' lands could not have been lost by erosion. (*Grover* v. *Shields*, 32 Barb. 374; *Bissell* v. *N. Y. C. & H. R. R. R. Co.*, 23 N. Y. 61; *Rogers* v. *Jones*, 1 Wend. 237; *Trustees, etc.,* v. *Strong*, 60 N. Y. 56; *De Lancey* v. *Piepgras*, 138 N. Y. 26.) Even though the beach had been worn away by erosion, in case of its again rising above the water through the operation of natural causes, its proprietorship would return to the original riparian owners. They would have the right to fill it in and thus reinvest themselves with their original ownership. (*Mulry* v. *Norton*, 100 N. Y. 424; *C. & S. L. R. R. Co.* v. *Valentine*, 19 Barb. 484; *Benson* v. *Townsend*, 26 N. Y. S. R. 644.)

*Clark H. Hammond, Corporation Counsel (Jeremiah J. Hurley* of counsel), for City of Buffalo, respondent.

Assuming that portions of the blocks as originally surveyed were under water at the time of the sale, no title to those lands passed to the patentees. (*People* v. *N. Y. & S. I. F. Co.*, 68 N. Y. 71; *People ex rel. Burnham* v. *Jones*, 112 N. Y. 597.) The commissioners were not in error in finding that the New York Central and Hudson River Railroad Company is not the riparian owner or in a legal sense owner of adjacent uplands. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75.)

*Roland Crangle* for Michael Steffan et al., respondents. The shore line was correctly fixed by the commissioners. (*People* v. *Jones*, 112 N. Y. 597; *Matter of Comrs. of State Reservation*, 37 Hun, 537.) The right of way of the New York Central Railroad Company does not constitute that company an upland owner. (*Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83.)

*Henry W. Hill* for Henry D. Kirkover et al., respondents; *Charles M. Harrington* for J. F. Schoellkopf, trustee, respondent; *Philip A. Laing* for Sigel Real Estate and Investment Company, respondent, and *Charles Diebold, Jr.*, for Hannah Shannon, respondent. The commissioners were correct in their determination of the shore line. (Gould on Waters, § 202; *C., etc., R. Co.* v. *Valentine*, 19 Barb. 484; *People ex rel. Burnham* v. *Jones*, 112 N. Y. 597; *Wheeler* v. *Spinola*, 54 N. Y. 377; *Gouverneur* v. *Nat. Ice Co.*, 57 Hun, 474; *People* v. *Silberwood*, 110 Mich. 103; *Miller* v. *Mendenhall*, 43 Minn. 95; *Hanford* v. *St. Paul R. Co.*, 43 Minn. 104; *Shively* v. *Bowlby*, 152 U. S. 9; *Rivell* v. *People*, 177 Ill. 468; *Dutton* v. *Strong*, 1 Black [66 U. S.], 1; *St. P. & P. R. R. Co.* v. *Schumier*, 7 Wall. [74 U. S.] 289; *Yates* v. *Milwaukee*, 10 Wall. 497.) The appellant rail-

road has no riparian or other rights which are involved in this proceeding by virtue of the fact that it is a railroad corporation and has a right of way which is now adjacent to the lake. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Hedges* v. *W. Shore R. R. Co.*, 150 N. Y. 150; *Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 580.)

*Frank C. Ferguson* for Laura C. Geib et al., respondents.

WERNER, J.   The exceedingly able and comprehensive report of the commissioners in this proceeding has served very materially to simplify the complicated questions which have been presented to the courts for decision. This fact was emphasized in the opinion of Mr. Justice SPRING who wrote for the Appellate Division upon the appeal to that court, and we concur in that opinion so far as it goes, but deem it necessary to discuss two additional questions which affect, respectively, the appellants New York Central and Hudson River Railroad Company and Bowen et al.

The proceeding was instituted by the city of Buffalo, under chapter 142 of the Laws of 1909, for the purpose of acquiring, for park purposes, certain lands in that city embraced in the territory bounded on the west by Lake Erie; on the north by Jersey street; on the east by the Erie canal, and on the south by Georgia street. All of this tract was originally upland, as is shown by a map made in 1816. Since that time there has been a gradual and constant encroachment of Lake Erie until the greater portion of the land is now under water. The right of way of the appellant, the New York Central and Hudson River Railroad Company, acquired from its predecessor, the Buffalo and Lockport Railroad Company, runs through

this tract from south to north. When this right of way was established it was upon upland which was some distance easterly from the shore line of the lake, but when this proceeding was instituted this upland had been eroded to such an extent that the water of the lake washed the westerly line of the railroad right of way from Georgia street on the south to a point a short distance south of Maryland street, as shown on the map attached to the record, with the exception of a small territory just north of Georgia street, where the shore line of the lake is a short distance westerly from the railroad right of way.

From the lands embraced within the general boundaries above referred to there are excepted three classes of lands which are not sought to be acquired by the city in this proceeding: 1st. All lands belonging to the state. 2nd. The lands comprising the railroad right of way. 3rd. The lands owned by the railroad company lying outside of its right of way, just north of Georgia street and between the right of way on the west and the Erie canal on the east, where the railroad company is the only upland owner.

The appellants Bowen and others, who have the record title to parcels 64 and 65 (as marked on the commissioners' map), which are to the west of the railroad company's right of way and its adjacent uplands, claim to be the present owners of said parcels and insist that they are entitled to compensation therefor. These two parcels were formerly upland. When this proceeding was commenced they were entirely submerged and surrounded by water, as they had been for many years. The commissioners decided that this flooding of the land was the result of erosion. That is a finding of fact which cannot be reviewed upon this appeal. Counsel for the appellants Bowen et al. concedes that if the submergence of these two parcels was caused by erosion, which means the gradual and imperceptible wearing away of the land by the natural action of the elements, the ownership is now in the state

by virtue of its sovereign title to all land below high-water mark in the navigable waters of the state. It is urged, however, that these appellants, Bowen et al., have still a right of reclamation for which they are entitled to compensation. The commissioners decided against this contention and we concur in their conclusion. The law applicable to this branch of the proceeding is that " when portions of the mainland have been gradually encroached upon by the ocean so that navigable channels have been extended thereover, the people, by virtue of their sovereignty over public highways, undoubtedly succeed to the control of such channels and the ownership of the land under them in case of its permanent acquisition by the sea." (*Mulry* v. *Norton*, 100 N. Y. 424, 434.) This is also the rule as applied to the waters of the great lakes and the navigable streams of the state. The loss of lands by the permanent encroachment of the waters is one of the hazards incident to littoral or riparian ownership. Such changes are due to natural causes to which the courts have from time immemorial applied rules of law founded upon considerations of natural justice and public necessity. When land bordering a body of water is increased by accretion, that is to say, by such a slow and gradual deposit of particles that its progress cannot be always measured even though its results may be discerned from time to time, the new land thus formed belongs to the owner of the upland to which it attaches. By the same reason the rule is that when the sea, lake or navigable stream gradually and imperceptibly encroaches upon the land, the loss falls upon the owner, and the land thus lost by erosion returns to the ownership of the state. This is not the rule where the loss of the land occurs by avulsion, defined as the' sudden or violent action of the elements, the effect and extent of which is perceptible while it is in progress. In such cases the boundaries do not change. (*Jefferis* v. *East Omaha Land Co.*, 134 U. S. 178; *Nebraska* v. *Iowa*, 143 id. 359;

*Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Mulry* v. *Norton,* 100 N. Y. 424; *Matter of Hull & Silby Railway,* 5 Mees. & W. 327.)

The land of the appellants Bowen et al. has been lost by erosion. For many years it has been completely submerged. Under the rule applicable to loss of land by erosion the state is now the owner thereof. During the years in which this change was in progress the former owners made no attempt to stay the encroachment of the water or to reclaim the lost land. Meanwhile the railroad company has become the owner of the upland with such riparian rights as attach to it. It would result in intolerable confusion and public inconvenience to hold that in such circumstances the former owners have a perpetual right of reclamation. If that were the law there would be an end to riparian improvements, for no riparian owner could ever be certain of his tenure or title. No upland owner could ever be sure of his access to the water or free from doubt whether such access were a permanent legal right or a mere temporary privilege enjoyed by sufferance. It is obviously a rule of necessity and justice that the loss of land by erosion carries with it all incidents of ownership. (*Welles* v. *Bailey,* 55 Conn. 292; *Nixon* v. *Walter,* 41 N. J. Eq. 103.)

In the discussion of this subject we have not overlooked certain expressions of Chief Judge RUGER in his opinion in *Mulry* v. *Norton* (*supra*), which are relied upon by counsel for the appellants Bowen et al. in the proceeding at bar. In that opinion there are quite a number of quotations from learned text writers and many original observations of a general character relating to littoral and riparian rights, loss of lands by avulsion or erosion, and acquests of land by recession of water, alluvion or accretion, which were doubtless used to illustrate the rule applicable to the specific facts of that case. This becomes evident when we consider the breadth of the discussion and the limited scope of the decision. In that

1912.]          Opinion, per WERNER, J.          [206 N. Y.]

case the controversy. was between contiguous upland owners over the title to beach lands. Mulry, the plaintiff, claimed title under a chain of conveyances which by definite description embraced the *locus in quo.* The defendants, through their grantor, claimed to have acquired the land in dispute by alluvion or accretion. The changes in the disputed territory, all of which was within the boundaries of plaintiff's deed, were wrought by the "sudden and violent operation of the tides," which caused the removal of "large and perceptible sections of beach" from one place to another, and during these changes the plaintiff was the undisputed owner of the adjacent uplands. In these circumstances it was held that the plaintiff had not lost his title to lands which had been temporarily affected by the sudden and violent action of the sea. It was with reference to these facts that Chief Judge RUGER wrote: "It is not, however, every disappearance of land by erosion or submergence that destroys the title of the true owner, or enables another to acquire it, for the erosion must be accompanied by a transportation of the land beyond the owner's boundary to effect that result, or the submergence followed by such a lapse of time as will preclude the identity of the property from being established upon its reliction. Land lost by submergence may be regained by reliction, and its disappearance by erosion may be returned by accretion, upon which the ownership temporarily lost will be regained. * * * It is equally true, however, that when the water disappears from the land, either by its gradual retirement therefrom or the elevation of the land by avulsion or accretion, or even the exclusion of the water by artificial means, its proprietorship returns to the original riparian owners." (p. 434.) In the case at bar, as we have seen, the lands of the appellants Bowen et al. have been completely submerged by imperceptible erosion, and in this controlling circumstance we find the radical difference between the two cases. In the *Mulry* case the

land which had been temporarily lost by the violent and perceptible impact of the elements was reformed within the boundaries of the plaintiff's title. In the case at bar the lands of the appellants Bowen et al. have completely disappeared by imperceptible erosion under conditions which support no reasonable hope or expectation that they can ever be reclaimed. They are covered and surrounded by water in such a way that there is no prospect of their restoration by any process, either natural or artificial. In the light of these considerations, we think it clear that there is nothing in the opinion in the *Mulry* case which supports the contention of the appellants Bowen et al. in the proceeding at bar.

Part of the land under water, which lies to the west of this upland owned by the railroad company, has been granted by the legislature to individuals (L. 1887, ch. 438; L. 1894, ch. 343), but without prejudice to the riparian rights, if any, of the railroad company. These lands have been condemned in this proceeding and awards have been made therefor. The title to other portions of the land under water is in the state, and these are not affected by this proceeding. The upland owned by the railroad company outside of its right of way was acquired in part by condemnation and in part by conveyances from the owners. It is used for locomotive house, yards, approaches, switches and storage tracks, and these are, of course, all proper railroad purposes within the scope of the General Railroad Law. The railroad company claims to be a riparian owner in two separate and distinct capacities.

1. Counsel for the railroad company contends that where its right of way borders upon the waters of the lake it is entitled to the same riparian rights as any upland owner would be if the right of way were not there. The commissioners have decided against this contention and their decision, which was unanimously affirmed by the Appellate Division, is fully sustained by

the decisions of this court. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; *New York Central & Hudson R. R. R. Co.* v. *Aldridge*, 135 id. 83.) The established law in this regard is that when a railroad company acquires a right of way which intervenes between a navigable body of water and the adjacent upland, the owner of the upland retains all the riparian rights which he had before the railroad was built. In such a·case the railroad right of way, whether acquired by proceedings *in invitum* or by deed in fee, is held only for the specific purposes served by the construction and operation of railroad tracks, and does not include the riparian rights which are incident to the ownership of uplands as that term is generally understood.

2. The railroad company further asserts that it is a riparian owner as to the upland which it owns adjacent to its right of way, and which is used, as already stated, for locomotive house, switching, storage and the like. This upland has not been condemned in this proceeding, but the report of the commissioners contains expressions intimating that as to this upland no riparian rights exist. In this view we think the commissioners erred. The present record does not definitely disclose the character of the railroad company's title to these uplands; it simply appears that they were acquired by the railroad company, in part by condemnation and in part by purchase. Even if the question as to the railroad company's riparian rights were now before us for adjudication, it would be impossible to define their exact nature and extent, since that depends upon proofs which are not in the record. With this brief statement we might properly pass this question without further present consideration were it not for the challenge to the railroad company's asserted right to hold any lands in fee or by any other title that might invest it with riparian rights. Lest our silence on that subject might be construed as acquiescence in the claim that the railroad company can have no

riparian rights in its uplands, we will briefly discuss a few general propositions bearing upon the subject without attempting to decide in advance just what disposition shall be made of the railroad company's claims when the courts may be required to pass upon them.

It is well settled that corporations, limited in duration, may purchase and hold the fee of land, and sell it whenever it is no longer necessary or convenient to keep it. (*Nicoll* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121, 129.) In the case just cited we find the general rule very succinctly stated in the language of Chancellor KENT: "Corporations have a fee simple for the purpose of alienation, but they have only a determinable fee, for the purpose of enjoyment. On the dissolution of the corporation, the reverter is to the original grantor or his heirs; but the grantor will be excluded by the alienation in fee, and in that way the corporation may defeat the possibility of a reverter." (2 Kent, 282.) That is the rule which has been applied in this state. (*People & Health Comrs. of N. Y.* v. *Mauran*, 5 Denio, 389–401; *Heath* v. *Barmore*, 50 N. Y. 302; *Yates* v. *Van De Bogert*, 56 N. Y. 526, 530.) We can find nothing in the Railroad Law which contravenes or changes this rule. Railroad corporations are expressly authorized to acquire "real property, or any right, interest or easement therein," either by purchase or condemnation, and the only limitation upon this right is that every such property right, interest or easement must be taken and used for the purpose for which a railroad corporation is organized, or for some purpose stated in the Railroad Law. (Railroad Law, § 1.) It is common knowledge that railroad corporations expend large sums of money for station houses, freight depots and other buildings which are all used for railroad purposes, but in the use of which there may be fluctuations and changes which are not permissible as to a railroad right of way. A passenger station or a freight depot may be discontinued or moved for reasons of business convenience

or public necessity.  There can surely be no doubt that in such a case a railroad company, having a title in fee to such lands which it no longer needs, may sell and convey precisely as any individual may do.  If such lands happen to be so situated that a private owner would be entitled to riparian rights, what becomes of these rights while the lands are held and owned in fee by a railroad corporation?  Riparian rights do not constitute an independent estate.  They are an incident to the estate in uplands abutting upon navigable waters, and when a railroad company acquires the unrestricted fee in such uplands it would seem necessarily to follow that the riparian rights follow the title.  The riparian rights in such a case may be restricted by the limitations of the railroad company's charter or the statutes under which it is incorporated, but that merely relates to the extent of the use and not to the existence or nature of the right.

But even if the railroad company has not a title in fee to any of the uplands, it has at least a permanent easement, coeval with its corporate existence, under which it is entitled to exclusive use, possession and control.  (*Roby* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 176; *Hudson & Manhattan R. R. Co.* v. *Wendel,* 193 id. 166.)  Since riparian rights pertain to the use of uplands in connection with water upon which it abuts, the question naturally arises what becomes of these riparian rights where a railroad company has the absolute right to the use of the upland during the term of its corporate existence?  The question would seem to have been answered in the recent case of *Naylor* v. *N. Y. C. & H. R. R. R. Co.* (196 N. Y. 544), where this court affirmed a judgment in favor of the defendant, upholding its claim to riparian rights as against an upper upland owner.  There the land lay outside of the railroad right of way and was used for a freight yard.  Here the land is used for the same and similar purposes.  It is possible, in view of the fact that the only opinion in the *Naylor* case was written in the Appellate

Division upon demurrer to the complaint and that the affirmance in this court was without opinion, that this particular phase of the question of a railroad company's position in respect of riparian rights may be considered as not yet definitely and finally settled, and we, therefore, leave it without further discussion until it is directly presented.

The report of the commissioners and the orders of the courts below should be modified by reciting that they are without prejudice to the railroad company's riparian rights, such as they may be determined to be when the question arises, in the uplands outside of the railroad right of way not acquired by the city in this proceeding, and as thus modified affirmed, with costs to the appellant railroad company.

CULLEN, Ch. J. I concur in the opinion of WERNER, J. It is theoretically possible at least that the railroad company may have riparian rights attached to certain of the pieces of land owned by it. It is equally possible that they have no rights of the kind. The question depends on the terms and character of the conveyances by which the lands were granted to it. The record before us contains nothing but a reference to the deeds and the record thereof, but does not state their contents, and it is not possible in this state of the record to determine whether the railroad company has or has not any riparian rights.

COLLIN, J. (dissenting). The city of Buffalo is proceeding to take, under the provisions of chapter 142 of the Laws of 1909, a tract of land (certain parts being excepted) within the city and bordering on the eastern shore of Lake Erie, for the purposes of a public park. In the proceeding, the commissioners appointed to ascertain the compensation to be made to the persons interested in the lands to be taken have made a report, which, having been unanimously affirmed by the Appellate Division, presents

the facts and questions which will be considered in this opinion. The commissioners determined not only the compensation to be awarded, but also the conflicting claims of title. The jurisdiction exercised by them in this particular was lawful for the reasons stated by the Appellate Division through the opinion of Mr. Justice SPRING.

The New York Central and Hudson River Railroad Company asserts that it is aggrieved by the determination of the commissioners, in that it denied to the company the ownership of any riparian rights in connection with or incident to its right of way where it is in contact with the lake, and any compensation for riparian rights. The right of way, or roadway, of the company is one hundred feet wide throughout the northerly and southerly length, of about three thousand feet, of the track. It was acquired in part by condemnation and in part through grants. Chapter 142 of the Laws of 1909 fixed as the western boundary line of the lands which might be acquired "the shore line of Lake Erie as shown by a" named map, which the commissioners designated the "Foster Map." Such shore line was that of 1816, and was many hundred feet west of the present shore line; hence the tract which the city is acquiring extends these many hundred feet west of the present shore line. About seventeen hundred feet of the west side of the right of way borders on the present shore line and the waters of the lake, because the lands which were east of the shore line of 1816 and west of the present shore line have been removed by erosion, that is, by the washing away of them by the waters, gradual and imperceptible as it proceeded. The harbor line in the lake in front of the tracts as established by the United States government, beyond which docks and piers cannot be erected, is many hundred feet west of the present shore line. There is, therefore, a considerable space between the right of way and the harbor or navigation line, subject to the lawful exercise of riparian rights. The statute authorized the taking

of the tract " together with all the rights and appurtenances incident thereto and connected therewith, including all riparian rights and lands under water, if any, or any interest therein, owned by any person or corporation, whether or not such lands and premises or any part thereof are held or used for public purposes by any corporation having the power of eminent domain; excepting from the said lands and premises " the land " being used and occupied by the New York Central and Hudson River Railroad Company, the successor to the said Buffalo and Lockport Railroad Company." It provided: " Nothing herein contained shall affect any estate, right, title or interest which the people of the State of New York have in and to any of the lands and premises above described."

The commissioners rightly held that the statute enabled the city to take in the proceeding all the riparian rights incident to or connected with the tract; and held further, citing as controlling authorities decisions of this court, that the company did not stand in the position of an ordinary riparian owner and riparian rights were not connected with its right of way, for the reason that it holds it for railroad purposes only, and denied compensation on account thereof. Such determination of the commissioners conforms with the law of this state. It is true that riparian rights in navigable waters pertain to the land abutting on the waters; they are lost to the owner whose land wholly disappears by erosion and are gained by him whose lands the waters reach. A general principle is that lands which are riparian attach to themselves riparian rights. (*Mulry* v. *Norton*, 100 N. Y. 424; *Welles* v. *Bailey*, 55 Conn. 292.) The railroad company cannot, however, invoke or reap the benefits of the application of this principle, because it holds the right of way and can use it only for the purposes expressed in its charter, those of the construction, maintenance and operation of the railroad. It took the lands, either by condemnation or grant, for those purposes only, and the limi-

tations placed by the statute upon the use of the lands preclude the existence of riparian rights as incident to them. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75, 90.) The extent and nature of the riparian rights are to be determined by the law of this state, subject to the authority of Congress under the Constitution of the United States. (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605, 632; *Weems Steamboat Co.* v. *People's Steamboat Co.*, 214 U. S. 345, 355.)

The counsel for the railroad company argues that the affirmance of such determination of the commissioners permits the company to assert that it owns riparian rights in connection with certain lands immediately east of the part of its right of way contiguous to the waters. Into the consideration of this claim additional facts enter. The company owns and for more than forty years has owned the lands immediately east of and contiguous to the southern one thousand feet or thereabouts of its right of way where it borders on the lake as stated. Those lands extend easterly from the right of way to the Erie canal, a distance of about two hundred and fifty feet. They were acquired by the company in part through condemnation and in part by grants. They have been and are used by the company for purposes of a locomotive house and railroad yards. They are a part of the lands excepted by the statute and, therefore, are not to be taken. The commissioners made no award of compensation to the company or any person for riparian rights, if any, connected with them. As they extend easterly to the Erie canal, there are no upland owners east of them to make claims to any riparian rights. The company claims it is aggrieved because the commissioners did not hold that riparian rights attached to those lands.

We do not deem it necessary to decide in this case

whether or not the right of way which intervenes between the waters and those lands would bar the connecting of riparian rights with them. The principle of law and the authorities, already cited, which declare that the right of way strip does not absorb or attach to itself riparian rights, compel the same conclusion as to the lands used for a locomotive house and railroad yards. The relative statutes or the charter of the company do not intend or contemplate that riparian rights are necessary to the use, operation or purposes of railroad yards or round houses, or locomotive houses. It is conceded by all the counsel before us that the company or its predecessor company has been subject to the general railroad law first given form in chapter 140 of the Laws of 1850. The purpose of the incorporation, as stated in the act of 1850, was that of "constructing, maintaining and operating a railroad for public use in the conveyance of persons and property." (Section 1.) The act gave a company the power to acquire title to real estate, required for the purpose of constructing or operating the railroad, by condemnation (Section 13), and provided that the company should be entitled to use the real estate for the purposes of its incorporation during the continuance of its corporate existence and that it should be deemed to be acquired for public use. (Section 18.) The commissioners of the land office were given power to grant to any company formed under the act any land belonging to the people of the state which may be required for the purposes of the road on such terms as may be agreed on by them, and empowered the company to acquire title thereto by appraisal as in the case of lands owned by individuals (Section 25), and, also, "to take and hold such voluntary grants of real estate and other property as shall be made to it, to aid in the construction, maintenance and accommodation of its railroad; but the real estate received by voluntary grant shall be held and used for the purposes of such grant only. 3. To purchase, hold

and use all such real estate and other property as may be necessary for the construction and maintenance of its railroad, and the stations and other accommodations necessary to accomplish the objects of its incorporation; * * * to erect and maintain all necessary and convenient buildings, stations, fixtures and machinery for the accommodation and use of their passengers, freights and business." (Section 28.) While subsequent enactments have extended the powers granted by the original act of 1850, they have not relaxed the restrictions or limitations imposed by it. The company may acquire real estate by grants or by the exercise of the right of eminent domain, only for those purposes reasonably incident to the proper construction, maintenance and operation of the railroad as a carrier of goods and passengers. The extent of the estate acquired, whether it be a permanent easement for the uses and purposes of the railroad, with exclusive possession and control in the company during its corporate existence, or a full fee title, is irrelevant in a consideration of the capacity and uses given or permitted to it as the owner of that estate, by the charter, that is, by the pertinent statute law and the certificate of incorporation. The nature of the estate acquired does not extend the corporate purposes or powers as defined by the charter or shrink the qualifications or restrictions it imposes as to them. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83, 95.)

Nor does any valid distinction, at any point in our present consideration, arise from the different uses to which the lands are subjected by the company. No part of the real estate properly held by it is free from or unaffected by the restrictions, subject to which the whole of it was acquired. They equally and impartially apply to the whole of it and constrict its uses. The law does not invest the roadway with any characteristic or quality by which it is acquired and held exclusively for railroad purposes, while the yards and the lands upon which are

22

[206 N. Y.]    Dissenting opinion, per COLLIN, J.    [Oct.,

the locomotive houses and freight and passenger stations
are not. Freight, storage and switch yards, lands for
freight and passenger stations and round houses are as
essential to the fulfillment of the chartered purposes of
the company as is the roadway. The power to take or
receive real estate for one use or another is a single and
the same power; the nature and extent of the interest of
the company therein is not affected by the one use or
another and each use is in aid of the operation of the rail-
road as a public highway. (*Matter of N. Y. C. & H. R.
R. R. Co.*, 77 N. Y. 248; *Rensselaer and Saratoga R.
R. Co.* v. *Davis*, 43 N. Y. 137; *Matter of N. Y. & H.
R. R. Co.* v. *Kip*, 46 N. Y. 546.)

The fact that these lands extend from the roadway of
the company to the canal and hence there are no other
lands to which riparian rights can attach does not tend to
establish that riparian rights are appurtenant to them.
Riparian rights in navigable waters held by the state as
a trustee for the use of the public in common, are the
various privileges in the waters, which are incident,
under the law of the state, to the ownership of the shore.
In such ownership they have their origin and, generally
speaking, they are annexed exclusively to land which bor-
ders upon the waters. They are valuable property rights
which may be severed from the riparian land by grant,
condemnation, relinquishment or prescription. (*Matter
of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248; *Town of
Brookhaven* v. *Smith*, 188 N. Y. 74; *Barnes* v. *Midland
R. R. Terminal Co.*, 193 N. Y. 378; *Sage* v. *Mayor, etc.,
of N. Y.*, 154 N. Y. 61.) The result worked as to the
lands of the railroad company, while under its owner-
ship, is, that the riparian rights, which the bordering
waters would have attached to the lands were they pri-
vately owned, are severed from them, because they are
not necessary to or required by the uses or purposes for
which the company holds them, and remain in the state
as trustee. We hold that the doctrine of the *Aldridge*

*Case* and *Rumsey Case* (*supra*) precludes the railway company from maintaining that it owns riparian rights in connection with its lands involved in this proceeding.

We have considered the other points presented by the appellant railroad company and think they present no error on the part of the commissioners, nor question requiring discussion in this opinion.

The appellants Bowen and others were the owners of certain of the lands which were wholly removed by erosion. They assert that they own the right to reclaim their lands; that the right is a property right and is to be taken through the proceeding. The commissioners held that their title to the lands was lost to them and became vested in the state.

A littoral owner is at the risk of losing his land to the state, in part or entirely, through erosion. He likewise is entitled to any addition to his land through accretion, that is, by the growth, gradual and imperceptible as it progresses, of his land into the situs of the waters, whether the accretion results from alluvial deposits or formations, or reliction, that is, the recession of the waters. He is bound to accept the gradual and imperceptible alteration of the shore or high-water line as an alteration in the boundary of his land. His property line expands as his land gradually and imperceptibly encroaches upon the water and contracts as the water gradually and imperceptibly encroaches upon his land. If the change in the water line takes place suddenly and visibly, that is, through avulsion, the ownership remains according to the original or former boundaries. The title to the waters replacing the land lost through erosion vests in the state in its sovereign capacity for the benefit of the people. (*Mulry* v. *Norton*, 100 N. Y. 424; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Sage* v. *Mayor, etc., of N. Y.*, 154 N. Y. 61.)

The waters of Lake Erie have supplanted the entire of the lands of the appellants, and the title to them

and the lands underneath is in the state. (*Langdon
v. Mayor, etc., of N. Y.*, 93 N. Y. 129,. 155.) The
appellants' have no interest, right or title in them. The
law of this state does ·not recognize or adopt the doctrine
that the owner of littoral land, which has disappeared
through erosion, may intrude upon and exclusively
appropriate its situs either through' filling in or an
embankment keeping the submerging waters from it.
While the land or a part of it exists the littoral owner
may construct in the adjoining waters of the state and
upon the land under them, a pier, reasonable and proper,
for the purpose of access from the land to the navigation
line.   This right is subordinate to the exercise of the
power of the legislature, or of the Congress for the
improvement of navigation, or for the regulation of com-
merce.   (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74.)
He has not, however, the right of going into the water of
the state or upon the lands underneath for the purpose of
reclaiming submerged lands.   (*People ex rel. Blakslee* v.
*Commissioners of the Land Office*, 135 N. Y. 447; *Saun-
ders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Coxe*
v. *State of N. Y.*, 144 N. Y. 396.) The conclusion of the
commissioners was right.

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J. (in memorandum), GRAY and HISCOCK,
JJ., concur with WERNER, J.; HAIGHT and VANN, JJ.,
concur with COLLIN, J.

Ordered accordingly.