NATHAN SCHWARZSTEIN and AUGUSTA SCHWARZSTEIN, Appellants, *v.* B. B. BATHING PARK, INC., and Others, Respondents.

Second Department, December 8, 1922.

Waters and watercourses — action to compel removal of bulkhead built from defendant's upland to Atlantic ocean at Manhattan Beach — avulsion — littoral owner had right to reclaim land lost by avulsion — interior upland owner does not become littoral owner with attending rights where land between his land and ocean is lost by avulsion — land of defendant washed away by violent storms — defendant had right to build and maintain bulkhead.

The defendant owner of land bordering on the Atlantic ocean at Manhattan Beach, Long Island, did not lose title to land lost by avulsion. He may reclaim said land where it can be identified and to that end may erect bulkheads and fill in where the land was washed away.

An interior upland owner whose title does not run to the shore cannot claim to be a littoral owner and demand the rights attending on such ownership where upland between his land and the shore is lost by avulsion to such an extent that the ocean reaches his land, but the land so lost is reclaimed by the original owner.

Accordingly, in this action, which was brought to compel the defendant to remove a bulkhead constructed for the purpose of reclaiming land lost by avulsion, the plaintiff was not entitled to have the bulkhead removed, since it appears that prior to the time when the defendant acquired title to its land the foreshore had been washed away by a series of violent storms and its predecessor in title had, to a certain extent, reclaimed the land but by reason of the avulsion the ocean came up to, or nearly to, the plaintiff's land; that the deed to the plaintiff did not describe his land as bordering on the ocean, and that the deed to the defendant did not reserve to the grantor any rights to the land under water.

APPEAL by the plaintiffs, Nathan Schwarzstein and another, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 6th day of June, 1922, upon the decision of the court rendered after a trial at the Kings Special Term dismissing the complaint

*Meier Steinbrink* [*Frank E. Johnson* with him on the brief], for the appellants.

*Arthur D. Kinney* [*H. Schieffelin Sayers* with him on the brief], for the respondents.

KELLY, J.:

The plaintiffs, owning two lots of land on the westerly side of Corbin place at Manhattan Beach, Coney Island, 40 feet front by 144 feet in depth, brought this action in June, 1920, to compel the removal of a bulkhead erected by the defendant bathing park

and Macaday Building Corporation, its contractor, running from the upland of the defendant bathing park corporation which was formerly the westerly portion of the parcel of land known as Manhattan Beach, south into the Atlantic ocean. Defendants' property is to the west of plaintiffs' lots, and plaintiffs allege that prior to the erection of the bulkhead in question they had free access to the ocean and that during high water part of their property was " swept by the ocean." They charge that the bulkhead erected by the defendants is an unlawful interference with their rights as " abutting or littoral owners," and that it interferes with the rights of the public in the foreshore between high and low-water mark. The defendants answer that the lots owned by the plaintiffs as well as the land to the west thereof, owned or occupied under lease by the defendant bathing park, was originally interior upland located inshore at some distance north of the ocean, the shore line at the time running substantially east and west. At that time, it is alleged, all of the property was owned by a common predecessor in title of both plaintiffs and defendant bathing park; that in a violent storm or storms the foreshore and land lying to the south, between the land now plaintiffs' lots and the present upland of the bathing park and the ocean, was washed away, the water coming up over the present location of plaintiffs' lots; that the former owner in the effort to reclaim and protect its property constructed bulkhead and refilled the submerged land, and that the official bulkhead and pierhead line established by the Secretary of War is about 900 feet south of plaintiffs' lots and of the upland in possession of defendant bathing park. Defendants allege that the bulkhead which plaintiffs seek to remove was subsequently erected by them and the land filled in behind it entirely on defendants' property. The allegation that plaintiffs are the owners of any littoral or riparian rights appurtenant to their lots is denied.

A trial was had at Special Term, at which witnesses were examined concerning the *locus in quo* and the history of the foreshore on Coney Island at this point. The plaintiffs' deed describes the two lots owned by them by metes and bounds and by reference to a map. The deed does not bound the plaintiffs' lots by the shore or water at any point, and the map referred to does not show the plaintiffs' lots as abutting on the ocean or foreshore. The testimony shows, and the court so found, that the plaintiffs' lots are part of the land reclaimed by the common predecessor in title by bulkhead and fill. The court has found upon the evidence that without these artificial barriers the plaintiffs' lots would have been completely submerged. It was plaintiffs' contention at the

trial that at certain high tides the water came up over the west end of their lots and that they had direct access to the ocean, but this was denied by defendants' witnesses. The trial justice decided the issue against the plaintiffs, finding that there was a bulkhead and fence west of the plaintiffs' lots separating them from the water independent of defendants' structure and that plaintiffs' lots at the westerly end were three feet above high water. The learned trial justice also found as matter of fact, and indeed it is not disputed by plaintiffs, that the original line of high water on Manhattan Beach was some 1,500 feet south of the plaintiffs' land, and the various alterations and changes in the location of the high-water mark and the shore were described by the witness Voorhies, a civil engineer residing nearby having personal knowledge of the location, and were shown on a map prepared by him and marked in evidence. He testified to the continual efforts of the owner of the upland, the common grantor, to save the beach and upland from the inroads of the sea dating back to 1878. A railroad known as the Marine railroad, formerly running east and west along the shore, connecting the Manhattan Beach Hotel property with Brighton Beach, was repeatedly washed out by storms and was bulkheaded and rebuilt from time to time, moving to the north, until its final disappearance. The storm and the sweep of the tide at this point cut into the shore forming a cove or bay in the identical location of this Marine railroad at what was formerly the westerly end of Manhattan Beach, so called. The plaintiffs' lots as found by the court lie to the north of the north line of the cove or bay, and the evidence and photographs show a continuous battle between the upland owner and the sea to save the land. The bulkheads built by the common grantor and the bulkhead built by the defendant bathing park and the contractor, Macaday Building Corporation, complained of in this action, are part of the structures or barriers erected to stop the inroads of the sea and save the upland. The character of the shore and structures and the location of plaintiffs' lots are shown on photographs received in evidence and upon the maps produced before the court.

The learned trial justice has found as matter of fact that the loss of the upland and beach were caused by a series of violent storms occurring between the year 1878 and the date of the trial in 1921, during which large portions of the beach were perceptibly washed away, and as already stated he has found that were it not for these artificial barriers erected by the predecessor owners of the property the plaintiffs' lots would be completely submerged.

It is also found on the evidence that the building of the bulkhead or sea wall on the west boundary of the so-called Manhattan Beach Estates which was practically the west line of the lots now owned by plaintiffs, caused an angle to be formed in which stones were placed during construction, causing the beach to make out at that point to a considerable extent. It is also found that when plaintiffs' predecessor in title conveyed the land now in possession of defendant, being the west end of Manhattan Beach, there was no reservation of any land under water or riparian rights.

The learned trial justice found as matter of law that the loss of the upland at the cove or bay was caused by inundation or avulsion, that the plaintiffs were not littoral or riparian owners, and had no littoral or riparian rights to the west of their lots over the land of the defendant Bathing Park, Inc., or otherwise, and directed judgment for the defendants dismissing the complaint upon the merits.

I think the judgment was right. The change in the foreshore by which the cove or bay formed at the westerly end of the property of the common grantor, the Manhattan Beach Estates, submerging the land now owned by plaintiffs and defendants, was not a gradual or imperceptible encroachment on the land, but occurred by reason of avulsion, sudden or violent action of the elements perceptible while in progress. The evidence justified the finding of the learned trial justice to that effect. Such loss of the land was not erosion or the gradual eating away of the soil, and did not change the boundaries nor did the owner lose his title where the extent and quantity of his land was apparent, the owner endeavoring as best he might to protect and reclaim his property. (*Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Nebraska* v. *Iowa,* 143 id. 359, 361; *Matter of City of Buffalo,* 206 N. Y. 319; *Mulry* v. *Norton,* 100 id. 424; *Silver* v. *Woodbury,* Special Term, Kings Co., April 16, 1917; affd., 185 App. Div. 937; reversed as to defendant Attorney-General and otherwise affirmed, 230 N. Y. 627; Gould on Waters [2d ed.], § 159.) It is said in Hargrave's Law Tracts (Sir Matthew Hale's De Jure Maris), 15, 17: " If a subject hath land adjoining the sea, and the violence of the sea swallow it up, but so that yet there be reasonable marks to continue the notice of it; or though the marks be defaced; yet if by situation and extent of quantity, and bounding upon the firm land, the same can be known, though the sea leave this land again, or it be by art or industry regained, the subject does not lose his propriety: and accordingly it was held by Cooke and Foster, M. (7 Jac. C. B.), though the inundation continue forty years." " But if it be freely left again by the reflux and recess of the sea, the owner may have

his land as before, if he can make it out where and what it was; for he cannot lose his propriety of the soil, though it be for a time become part of the sea, and within the admiral jurisdiction while it so continues."

So on the findings of fact in the case at bar sustained by the evidence, the common grantor did not lose title to the land submerged by reason of avulsion and reclaimed by the erection of the sea wall. The plaintiffs derive title to their lots through this common grantor; the land which they own and upon which ownership their action is based, is land reclaimed by virtue of this well-established principle. And the same right of reclamation vested in the defendant bathing park corporation with the conveyance by the common grantor of the land to the west of plaintiffs' lots. Said defendant is endeavoring to protect and reclaim its land, and the bulkhead and fill complained of erected upon its own land is constructed for that legitimate purpose. On the evidence here the plaintiffs were not littoral or riparian owners, their lots were not bounded by the sea or the foreshore. They could reach the water only by trespassing on the lands of the common grantor or defendant. Said defendant, like the common grantor, as a riparian owner had the right to protect its water front, and on the evidence and findings of fact the court was justified in deciding that no right of the plaintiffs to the use of the foreshore proper as it existed prior to the avulsion and no right of access to the sea was interfered with by the construction of the bulkhead complained of.

Neither the complaint nor the evidence in the case presents the issue of interference with the public right of passage along the foreshore. The case is based upon the mistaken claim that plaintiffs are the owners of riparian rights of access to the water from their lots. So far as passage along the foreshore is concerned, no public use of the beach is shown; the only use testified to is by persons coming to the beach by trespass over private property, and it would appear that if the beach at this point is foreshore under the facts here, as to which I express no opinion, the public right of passage if it exists at this place is as effectually blocked by the sea wall which supports and protects the plaintiffs' lots as by the structure erected by the defendants. Certainly the plaintiffs were not entitled in a court of equity to compel the removal of defendants' structure.

The judgment should be affirmed, with costs.

Present — BLACKMAR, P. J., KELLY, JAYCOX, MANNING and YOUNG, JJ.

Judgment unanimously affirmed, with costs.