In the Matter of the Town of Hempstead, Relative to Acquiring Title to Properties for Beach Protection and Park Purposes at Point Lookout on the Atlantic Ocean, in Nassau County.*

Supreme Court, Nassau County, May 24, 1954.

* Report confirmed, Stoddart, J., June 20, 1955.

*Ferdinand I. Haber* for Leonard Little and another, claimants.

*David Holman* and *Paul A. Fusco* for Mario Scolaro and another, claimants.

*John A. Morhous, Town Attorney (B. Thomas Pantano* of counsel), for Town of Hempstead.

FRANCIS G. HOOLEY, Official Referee. In this condemnation proceeding, the Town of Hempstead seeks to acquire title to certain properties at Point Lookout on the Atlantic Ocean shore front in the town of Hempstead, Nassau County, New York, for beach protection.

By an order of this court, dated the 3d day of March, 1954, and entered on the same day in the office of the clerk of Nassau County, the proceeding was referred to an Official Referee of this court to take proof with respect to and hear and report upon all claims of owners of the various damage parcels for compensation for the taking of their properties; and to take proof of the right, title and interest of the claimants Leonard Little and Florence Little in and to lands under water on August 20, 1952, which lands are described in title deeds of said claimants; and, further, to take proof and report upon consequential damages to such lands under water and the awards to be made for such consequential damages. That portion of the order of reference requiring the Referee to take proof of title of the claimants Leonard Little and Florence Little arose by reason of a stipulation duly filed in the Appellate Division, Second Judicial Department, on an appeal by the said claimants Leonard Little and Florence Little.

Besides Leonard Little and Florence Little, there are other claimants to a parcel shown on the damage map owned by Mario and Marie Scolaro, a portion of whose property is also claimed to be under water. By an oral stipulation entered into between the parties on the 10th day of May, 1954, in open court, at which time the matter came on to be heard, it was agreed that the parties would first submit to the Official Referee their evidence and claims with regard to the ownership of the land

under water, and that after the Official Referee had passed upon the preliminary question, the taking of proof on the question of value would be had at a later date.

The Littles in 1944, purchased an unsubdivided beach tract containing about 15 acres. The parcel was rectangular in shape, bounded on the south by the Atlantic Ocean, on the west by the Hempstead Town Park, on the east by a line in prolongation of the westerly line of Freeport Avenue, and on the north by a line running through the south line of Blocks 3 and 14 as they appear on a certain map. The property is known as Lot 60, Block A, in Section 61 on the land map of the County of Nassau. Damage parcel 1 is a part of this tract. Leonard Little acquired in 1937 and 1948, Lots 16 to 22 inclusive and 24 to 26 inclusive in Block 14 in the same section. The area of the 10 lots is 27,287.5 square feet. Damage parcels 5 and 7 are parts of these lots.

In the year 1933, Mario Scolaro acquired title to Lots 8 to 13 inclusive in Block 14 on the map of Point Lookout Beach; and Marie Scolaro acquired title to Lots 14 and 15 in Block 14 on said map. Damage parcel 4 is a part of the lots purchased by the Scolaros.

The damage map shows an intended taking with respect to Lot 60 of 30,000 square feet, alleged to be the only portion of the original acreage still above water. No reference was made in this proceeding to the submerged land. The lots in Block 14 were similarly treated. Parcels 5 and 7 are alleged to have contained about 7,500 feet. The rest of the original parcels, deemed submerged, are indicated on the map, but no reference is made to them. In the case of claimants Mario Scolaro and Marie Scolaro, owners of damage parcel 4, only the portion of the original acreage still above water is included in this proceeding. The submerged portion of the original acreage is ignored.

The claimants Littles and Scolaros insist that proof be taken by the Official Referee of the direct damages for lands taken and consequential damages to the submerged lands by reason of the taking, and fix the awards to be made and compensation for the takings and consequential damages. The town maintains that neither the Littles nor the Scolaros have any title to the submerged lands and that, therefore, the Official Referee is limited to a consideration of the damage for the taking of the land shown on the damage map, and that there are no consequential damages to be considered.

The Official Referee has heard the proofs and allegations of the parties on the question of title to the submerged lands and has taken testimony thereon. This memorandum is for the purpose of indicating to the attorneys the views of the Official Referee on the question of whether or not the claimants have any interest in the submerged lands and whether or not they are entitled to any compensation by way of consequential damages by reason of their ownership of the submerged lands, so that upon a further hearing they may submit their proof in accordance with the determination of the Official Referee upon the ownership of the submerged lands.

A determination of the preliminary question here involves a consideration as to whether or not the submerged lands are the result of erosion or avulsion in their legal meanings.

In *Schwarzstein* v. *Bathing Park* (203 App. Div. 700), it was held that the owner of land bordering on the Atlantic Ocean on Long Island did not lose the title to land lost by avulsion. The court distinguished between avulsion and erosion as follows (pp. 703–704): " The change in the foreshore by which the cove or bay formed at the westerly end of the property of the common grantor, the Manhattan Beach Estates, submerging the land now owned by plaintiffs and defendants, was not a gradual or imperceptible encroachment on the land, but occurred by reason of avulsion, sudden or violent action of the elements perceptible while in progress. * * * Such loss of the land was not erosion or the gradual eating away of the soil, and did not change the boundaries nor did the owner lose his title where the extent and quantity of his land was apparent, the owner endeavoring as best he might to protect and reclaim his property. (*Philadelphia Co.* v. *Stimson,* 223 U. S. 605; *Nebraska* v. *Iowa,* 143 id. 359, 361; *Matter of City of Buffalo,* 206 N. Y. 319; *Mulry* v. *Norton,* 100 id. 424; *Silver* v. *Woodbury,* Special Term, Kings Co., April 16, 1917; affd., 185 App. Div. 937; reversed as to defendant Attorney-General and otherwise affirmed, 230 N. Y. 627; *Gould on Waters* [2d ed.], § 159.)" In the case last-cited, the court further said: " It is said in Hargrave's Law Tracts (Sir Matthew Hale's De Jure Maris), 15, 17: ' If a subject hath land adjoining the sea, and the violence of the sea swallow it up, but so that yet there be reasonable marks to continue the notice of it; or though the marks be defaced; yet if by situation and extent of quantity, and bounding upon the firm land, the same can be known, though the sea leave this land again, or it be by art or industry regained, the subject does not lose his propriety: and accordingly it was held by Cooke and Foster, M.

(7 Jac. C. B.), though the inundation continue forty years.' ' But if it be freely left again by the reflux and recess of the sea, the owner may have his land as before, if he can make it out where and what it was; for he cannot lose his propriety of the soil, though it be for a time become part of the sea, and within the admiral jurisdiction while it so continues.' '' This seems to be established law. The remaining question before the Official Referee is whether the evidence thus far heard has established whether the submergence of the lands which are the subject of this dispute was caused by avulsion or erosion.

Competent engineers were produced by each side on this question. The Official Referee has come to the conclusion that the land in question was lost by avulsion rather than erosion. It is not necessary to decide whether a contributing factor for the submergence of the portions of the land came about from the construction work of the Town of Hempstead along the westerly shore of Jones Inlet, and continuing along the shore line of the ocean as a sea wall or dike. It is the opinion of the Official Referee that this construction was proper inasmuch as it saved the developed portion of Point Lookout, but there is credible evidence that the wall in question diverted the currents of Jones Inlet in a westerly direction, and caused added force to the waters thrown against the subject properties. The losses happened at particular times and were plainly observable. During heavy storms, tides were unusually high and large portions of the land were washed out. There is uncontradicted proof that in such storms land as much as thirty feet in depth was lost and disappeared.

It is the contention of the town that because the Nassau County Civil Divisions Act (L. 1939, ch. 273, as amd.) empowers the Town of Hempstead to construct and maintain sea walls, bulkheads, jetties, and so forth, the town could not be liable in this case even if the construction of the sea wall caused the avulsion of portions of the subject property, but this is not an action against the town for negligence. It is a claim that certain persons are owners of land under water. Even if the sea wall constructed by the town was necessary to protect a portion of the property near it which was being worn away, nevertheless, if the effect of the sea wall was to cause avulsion of the land so that the Littles, for example, who had a fifteen-acre plot there, lost more than fourteen acres thereof by reason of the construction of the wall, then the claimants still are the owners of the land under water. It is not necessary to the decision in this case that the Official Referee find that the sea wall caused the loss of the land of the

claimants. It is sufficient if the court finds that it was avulsion rather than erosion which caused such loss, and this without a determination of the cause thereof. The losses in question occurred roughly during the three-year period 1949–1952, and the testimony shows that much of the loss took place upon particular occasions during heavy storms at which time large portions of great depth were washed away. These losses were not gradual and imperceptible and the losses were caused by what might well be described as a cataclysm or catastrophe.

A case very similar to the one at bar is the case entitled: '' In the Matter of the City of New York * * * Relative to Acquiring Title to Real Property Necessary for the Extension of a Public Beach in the Borough of Brooklyn.'' (256 N. Y. 217.) There it was held that a riparian owner of uplands is not divested even temporarily of his title by avulsion, and that the change in the tangible character of the land conferred no interest in the State except the public right of navigation over waters covering earth which previously had been upland, and that the title remained in the individual owner thereof. In that case the land had been submerged by the ocean for more than thirty years, but the Court of Appeals held that the vacation of an award to the record owner on the ground that, through abandonment, title had vested in the State, which had granted such title as it had to the city, constituted error.

At the time of the condemnation of the subject property the Littles and the Scolaros owned respectively the land under water which they had originally purchased and they had a right to reclaim those lands. Proof will therefore be taken by the Official Referee not only as to the value of the land sought to be acquired in this proceeding as indicated upon the damage map, but also the consequential damages to the subject lands under water.