Bergan, J.
These two closely related appeals, one in a town’s condemnation proceeding and one in an action against the town for trespass, involve the same basic question of riparian rights on an ocean littoral. But at the threshold of each there is a procedural and jurisdictional problem under CPLR 5601 (subd. [d]) pursuant to which each appeal was taken.
In each case, the Appellate Division reversed a final judgment against the town on the law and the facts and directed further proceedings at Special Term on the issue of damages. On its reversal in the condemnation proceeding, the Appellate Division made new findings of fact, on which it also based its order of reversal in the trespass action. The appeals now before us have been taken directly to this court from the respective new final judgments entered following the subsequent proceedings at Special Term.
The appeal in each case is properly here as of right since it is taken from a final judgment entered following a prior nonfinal order of the Appellate Division which “necessarily affects” that final judgment (CPLR 5601, subd. [d]; see, also, Buffalo Elec. Co. v. State of New York, 14 N Y 2d 453; Wolfe v. State of New York, 22 N Y 2d 292). The scope of our review on such an appeal is limited to the prior nonfinal order of the Appellate Division (CPLR 5501, subd. [b]; Buffalo Elec. Co. v. State of New York, supra).
The court may, nevertheless, review the prior order of the Appellate Division in the condemnation proceeding on the facts as well as on the law, since the final judgment here on the appeal in that case was predicated on, and entered “ pursuant ” to, the new findings of fact made by the Appellate Division on its reversal of the prior final judgment of the Special Term (CPLR 5501, subd. [b]; Scarnato v. State of New York, 298 N. Y. 376; Cohen and Karger, Powers of the New York Court of Appeals, p. 468).
Although there was left open to the Special Term by the Appellate Division’s orders additional fact-finding responsibility which would be reflected in the final judgment, essentially that judgment is to be deemed one entered “ pursuant to ” the prior order of the Appellate Division; and that being so, the Court of Appeals has jurisdiction on this appeal from the final judgment to review the prior order of the Appellate Division.
*437 On the merits the Appellate Division’s orders are right. The question is whether at critical times in the controversy the town was a riparian owner entitled to the benefit of land under water as it accreted and became part of existing upland owned by the town or whether parties having title to the land formerly under water retained title notwithstanding such accretion.
The question, although argued at some length, narrows down in the end to deciding whether the town became a littoral or riparian owner by virtue of an earlier condemnation proceeding of upland to the former mean high water line.
The law on the question is settled. The leading New York decision is Matter of City of Buffalo. (206 N. Y. 319). There, Judge Werner examined carefully the rights of “ littoral or riparian ownership ” (p. 325). Gradual encroachment, he noted, results in a loss to the owner of the littoral, but when the land is increased by accretion “ that is to say, by such a slow and gradual deposit of particles that its progress cannot always be measured even though its results may be discerned from time to time, the new land thus formed belongs to the owner of the upland to which it attaches ” (p. 325).
On the other hand, the boundaries do not change, one way or the other, where the physical alteration is due to “ sudden or violent action of the elements ” which is “ perceptible while it is in progress ”.
The rule thus stated is consistent with Halsey v. McCormick (18 N. Y. 147) and was followed in Matter of City of New York (Realty Assoc.) (256 N. Y. 217). There is a good discussion of the problem in County of St. Clair v. Lovingston (23 Wall. [90 U. S.] 46, 59).
In an earlier condemnation proceeding in 1952 the Town of Hempstead condemned land at Point Lookout on the Atlantic Ocean to protect the shoreline and for a public park. The upland was acquired to the high water line of August 27,1952. No part of the land then under water was included in the proceeding. (208 Misc. 84, affd. 2 A D 2d 864, mot. for lv. to app. den. 2 N Y 2d 709.)
Portions of the land condemned, as well as adjacent land then under water, were owned by claimants-appellants Little and Scolaro. The land then under water had before 1952 submerged, *438 but it is not now disputed that the form of submergence involved did not result in loss of title to the then upland owners.
In that proceeding the Littles were allowed $79,473.79 for upland taken and $92,984.29 for consequential damage for the submerged portion for loss of access, a total of $172,458.08, involving three parcels. Eight years before the Littles had purchased the largest of the parcels for $1,500 cash and a $2,500 tax Hen, for which they were awarded $118,801.25 direct and consequential damage. They were awarded $53,656.81 for damages to the other two smaller parcels purchased in 1937 for a comparatively small amount. Much smaller amounts were allowed the claimants-appellants Scolaro.
Thus, although the title to the land under water as of the mean high water line of August 27,1952 remained in the claimants-appellants, they were left no access to it because the town had acquired title to the shoreline, but they were allowed damages for this loss of access.
After the condemnation of 1952 there was further accretion of the shoreline, accretion which extended out over the underwater land which was excluded from the 1952 condemnation and to which claimants-appellants had legal title.
This present second condemnation was brought by the town in 1959 to acquire claimants-appellants ’ land which had been under water at the time of the first proceeding in 1952. Between the first and second proceeding there had been an accretion from the 1952 high water line. The mean high water line of June, 1959 was employed in the new proceeding.
It is the submission of the town that under the general principles which have been discussed it became the owner of the land under water which had accreted to it as littoral or riparian owner as the result of title acquired in the 1952 condemnation and to the extent that this had occurred to the June, 1959 high water line claimants-appellants had lost title and hence were not entitled to damage; and that as to their land continuing under water, it had no value because it was without access.
It is not disputed that the submerged land was, by itself, valueless. But if the claimants-appellants had not lost and the town had not acquired title to the accreted upland, it would have had substantial value.
*439 The issue, then, turned essentially on whether the town, by the prior condemnation, had become a littoral or riparian owner with the usual rights of such an owner from accretion.
The Special Term held that “ the Town never acquired any riparian rights when it took the uplands in 1952, but that the incidents of its ownership terminated at the high water line of the ocean as of the date of acquisition in 1952 ” and that while “ a riparian owner may claim accreted land, the existence of which would otherwise destroy his access to water, the Town does not stand in that position ”.
It is reasonable to think, however, that if either a purchaser or a condemnor acquires upland of a water line he gets the rights that the owner of the upland had, including the right to accretion.
This essentially was the view of the Appellate Division. It noted that the unity of title of the former owners was broken by the prior condemnation so that the rights differed between upland and land under water and ‘ ‘ a new relationship was created between the upland and the submerged land ’ ’. The court continued: “ In that new relationship, although the individual owners retained the fee to their respective submerged lands, the town acquired littoral rights. ’ ’
This is a correct analysis of the problem and it embraces both the condemnation proceeding and the trespass action which are governed by the same principles.
In each case the judgment should be affirmed.
Chief Judge Ftjld and Judges Burke, Sceleppi, Keating, Breitel and Jasen concur.
In the proceeding: Decree affirmed, with costs.
In the action: Judgment affirmed, with costs.