153 So.2d 728 (1963)
MUNICIPAL LIQUIDATORS, INC., a Florida corporation, Appellant,
v.
Robert R. TENCH, as Trustee for Mrs. Lorraine Ballou, Erwin Robiner and Grace Robiner, his wife, and Virgil Wise and Mozelle E. Wise, his wife, and J.R. McDermott, a widower, and Trustees of the Internal Improvement Fund of the State of Florida, Appellees.
No. 3419.
District Court of Appeal of Florida. Second District.
May 10, 1963.
Rehearing Denied June 7, 1963.
Adrian S. Bacon, of Bacon & Hanley, St. Petersburg, for appellant.
Robert R. Tench, of Tench & Whitehurst, Clearwater, for appellees Tench, Robiner, Wise and McDermott.
Richard W. Ervin, Atty. Gen., and Robert C. Parker, Asst. Atty. Gen., Tallahassee, for appellee Internal Improvement Fund.
SHANNON, Chief Judge.
The appellant, Municipal Liquidators, Inc., is appealing from an adverse final decree of the lower court, wherein the chancellor found that certain land of the appellant on upper Tampa Bay was submerged, and that, consequently, title was vested in the State. This suit was brought by appellee Robert R. Tench, as Trustee for the named individual appellees, against the defendant-appellant and the Trustees of the Internal Improvement Fund of the State of Florida, the latter now participating in this appeal as appellees.
Appellant's land is described as Government Lot 3 of Section 28, Township 29 South and Range 16 East, Pinellas County, and will be referred to as Government Lot 3. It is or was water-front property facing on the waters of upper Tampa Bay. The original government survey was made in the "first quarter of the year 1844 by A.M. *729 Randolph, Dpt. Sur.," which survey was approved in 1845. The original conveyance was by patent of the United States of America on June 30, 1884, which patent was recorded on June 15, 1887. The appellant traces title from that time to his conveyance on May 22, 1958.
Appellees' land is located south of the south boundary of Government Lot 3, the latter lying between their land and Tampa Bay. Their land is described as Lots 3, 4 and 5, according to a plat of Pinellas Groves, recorded in Plat Book 1, Page 55, Public Records of Pinellas County, Florida, and located in Section 33, Township 29 South, Range 16 East. For convenience, a sketch of Government Lot 3 is shown below, with the approximate location of appellees' three lots.

In 1960, appellees applied to the Trustees of the Internal Improvement Fund for the purchase of the submerged lands lying between their property and the established bulkhead line, pursuant to Sections 253.03 and 253.12, Fla. Stat. 1959, F.S.A. The theory of appellees' application was that the land between their lots and the established bulkhead line was owned by the State, and that Municipal Liquidators had lost title to that portion of Government Lot 3 in dispute because it had disappeared through *730 erosion, to the extent that title had reverted to the State.
Application was heard by the Trustees, who deferred action on the application pending judicial determination of ownership. Appellees then, in May, 1961, filed suit in chancery for a declaratory decree, alleging that:
"Plaintiff would show that wherever defendant Municipal Liquidators, Inc's lot was located, the gradual and steadily working forces of nature have eroded Government Lot Three (3) to the point that its present existence insofar as land above water at high tide, has been materially reduced and that in fact none of Government Lot Three (3) is above water at high tide between plaintiffs' uplands and the heretofore alleged bulkhead line, all of which submerged lands plaintiff desires to purchase. That as a result of such gradual erosion, ownership of the land has reverted to the State of Florida, * * *"
The appellant answered and set up several defenses, among which was the defense of avulsion. The chancellor heard testimony and received in evidence photographs, diagrams, sketches, aerial photographs, etc., and in his final decree he stated:
"A transcript of 334 pages and many exhibits reflect the usual conflicts to be expected in a case of this kind. As counsel have looked at this composite of proof the same has taken on proportions as differently as the prismatic bands. Their inferences are in large part antipodal; and what is the controlling law does not find a common ground in the minds of these gentlemen."
The main issue before this court is whether the land involved herein has disappeared through the forces of avulsion, or by erosion and/or submergence. The chancellor found that the land had in fact disappeared, and this we must accept; and he further found that it was due to erosion.
In finding that there had been erosion, and hence, a reversion of title in the Trustees of the Internal Improvement Fund of the State of Florida, the chancellor quoted from this court's decision in Siesta Properties, Inc., v. Hart, Fla.App. 1960, 122 So.2d 218, in which the court, speaking through Judge Harold L. Sebring, said, in part:
"The rule we think should govern in such a situation is set forth in In re City of Buffalo, 206 N.Y. 319, 99 N.E. 850, 852, wherein it is stated: `When land bordering a body of water is increased by accretion  that is to say, by such a slow and gradual deposit of particles that its progress cannot be always measured even though its results may be discerned from time to time  the new land thus formed belongs to the upland to which it attaches. By the same reason the rule is that, when the sea, lake, or navigable stream gradually and imperceptibly encroaches upon the land, the loss falls upon the owner, and the land thus lost by erosion returns to the ownership of the state. This is not the rule where the loss of the land occurs by avulsion, defined as the sudden or violent action of the elements, the effect and extent of which is perceptible while it is in progress. In such cases the boundaries do not change.'"
The chancellor reasoned in his opinion, and we think correctly, that erosion or submergence is accretion in reverse, and the imperceptible principle is applicable in distinguishing erosion from avulsion. In other words, where the loss occurs through avulsion, which is defined as the sudden or violent action of the elements, and the effect and extent of which is perceptible, the boundaries do not change. But where the sea, lake, or navigable stream imperceptibly encroaches upon the land, the loss falls upon the owner, and the *731 land thus lost by erosion returns to the ownership of the State.
And there is a presumption of accretion or erosion as against avulsion. As stated in Gubser v. Town, 1954, 202 Or. 55, 273 P.2d 430: "* * * the law presumes, in the absence of evidence to the contrary, that changes to riparian land occur `by accretion, and not by a sudden and violent force'." Further, "[t]he person who claims the land under the water has the burden of showing that it caved off suddenly." Farnham, The Law of Waters and Water Rights, p. 333. This principle is repeated in 93 C.J.S. Waters § 83:
"One claiming that the change in a bed or stream was by avulsion rather than accretion has the burden of showing the avulsion, by showing a sudden change, or by a preponderance of the evidence by showing that the changes were violent and subject to being perceived while they were going on."
Therefore, the law seems clear as to these principles of law: in the event of erosion or submergence, the title to the land covered by water reverts to the State; erosion is presumed over avulsion; and the burden of proof is upon the party alleging avulsion.
The chancellor took the evidence in this case, which has been shown to be voluminous, studied the many exhibits, and with the consent of the parties, visited the land itself. He found that the appellant had not met the burden of proof of showing avulsion, and, we think, rightfully so. We feel, and so hold, that his decision should be affirmed, as his findings of fact can support no other decision.
As for the other points of law which the appellant has urged upon us, we fail to see any reversible error therein, and they are also affirmed. The chancellor in his final decree stated:
"3. That ownership of the submerged lands lying off shore from the defendant's uplands and specifically described in the survey attached to the plaintiffs' Complaint as Exhibit "B", is vested in the State of Florida to the established high water mark as shown therein.
"4. That the defendants Trustees of the Internal Improvement Fund of the State of Florida are directed to reconsider plaintiffs' application for purchase of said submerged lands in the light of the findings, opinion and decree of this court."
We hold that the final decree of the chancellor should be affirmed.
Affirmed.
ALLEN and SMITH, JJ., concur.