FUSSELL, CARROLL W., Associate Judge.
Defendant lot owners appeal from a final decree quieting the title of the plaintiff, City of Dania, and its assignee, to certain lands in Broward County. The defendants were the owners of lots in block 207, which was originally platted in 1924, at which time block 207 was bounded on the east by the Atlantic Ocean and on the west by a strip of land belonging to the plaintiff.
*521 The court found that thereafter block 207 gradually disappeared by erosion and that th'e defendants’ lots no longer exist. The court thereupon decreed that the lands of the plaintiff, City of Dania, and its as-signee, were bounded on the east by the Atlantic Ocean, and by its decree vested in the plaintiff, and its assignee, all of the riparian rights incident to the ownership of their said lands.
The defendant-appellants question this finding of the court, contending that there is no preponderance of the evidence indicating that the land gradually disappeared by erosion, and that in fact the evidence is fully insufficient to determine whether or not the land disappeared by erosion or by avulsion. It is further the contention of the appellants that since the plaintiff instituted this suit the burden is on the plaintiff to establish by a preponderance of the evidence that the land disappeared by erosion.
The difference between erosion and avulsion and the legal effect thereof upon the title, as well as the burden of proof in such matters, has been clearly stated by Judge Shannon of this court in the recent opinion of Municipal Liquidators, Inc. v. Robert R. Tench, etc., Fla.App., 153 So.2d 728:
“(1, 2) The chancellor reasoned in his opinion, and we think correctly, that erosion or submergence is accretion in reverse, and the imperceptible principle is applicable in distinguishing erosion from avulsion. In other words, where the loss occurs through avulsion, which is defined as the sudden or violent action of the elements, and the effect and extent of which is perceptible, the boundaries do not change. But where the sea, lake, or navigable stream imperceptibly encroaches upon the land, the loss f"’1s upon the owner, and the land thus lost by erosion returns to the ownership of the State.
“(3, 4) And there is a presumption of accretion or erosion as against avulsion. As stated in Gubser v. Town, 1954, 202 Or. 55, 273 P.2d 430: ‘* * * the law presumes, in the absence of evidence to the contrary, that changes to riparian land occur “by accretion, and not by a sudden and violent force”.’ Further, ‘(t)he person who claims the land under the water has the burden of showing that it caved off suddenly/ Farnham, The Law of Waters and Water Rights, p. 333. This principle is repeated in 93 C.J.S. Waters, § 83:
“ ‘One claiming that the change in a bed or stream was by avulsion rather than accretion has the burden of showing the avulsion, by showing a sudden change, or by a preponderance of the evidence by showing that the changes were violent and subj ect to being perceived while they were going on.’
“Therefore, the law seems clear as to these principles of law: in the event of erosion or submergence, the title to the land (covered by water reverts to the State; erosion is presumed over avulsion; and the burden of proof is upon the party alleging avulsion."
It was the duty of the chancellor to determine the facts, and we find no error in his findings of fact that block 207 was submerged and disappeared; nor do we find any evidence in the record overcoming the presumption of erosion over avulsion. Plaintiff proved the submergence and then the burden of proof shifted to the defendants to overcome the presumption of erosion.
The appellants further question the decree of the court quieting th'e title in the plaintiff, City of Dania, and divesting the appellants of their property upon its submergence.
The appellants in their brief frankly admit that there are two lines of authority on whether a riparian owner, whose land is submerged by water, loses and become's *522 divested of his property rights therein. It is the contention of appellants that the Florida courts should follow the line of authority where the original owner does not lose his right to his submerged land if, upon restoration, it can be identified.
The case of Municipal Liquidators, Inc. v. Tench, supra, fully determines the position of the State of Florida on this question, and decides the same contrary to the contentions of appellants. In this case, which was one for declaratory decree, the plaintiffs were the owners of lands originally not bounded by the waters of Tampa Bay, but rather was adjacent to the lands of the defendant which were bounded by the Bay. It was alleged that defendants’ lands were gradually lost by submergence and erosion and that the State thereupon became the owner of the submerged lands. Plaintiff had sought to purchase said bottom lands from the State and the State had refused to sell until the courts had determined whether or not it was the owner of such lands. The purpose of the suit was for the court to determine this by declaratory decree so that the plaintiff could then purchase the lands from the State.
As set out in this case, this court said: “In the event of erosion or submergence, the title to the land covered by water reverts to the State.” The only factual difference between that case and the one at bar is that in the Municipal Liquidators, Inc., case the title of the Bay bottom lands where the submerged land had formerly stood, was decided by the court to be in the State and lost to the former owner by reason of submergence, whereas in the instant case the only difference is that the appellants are contending that their title to the submerged lands should continue and become attached to any lands hereafter created by accretion. This position is untenable because if the title to the bottom lands where the submerged lands formerly stood reverts to the State and can be sold to another, then certainly there can be no right of title by subsequent accretion when the lands have themselves become completely submerged and there is no visible land to which lands by accretion could attach.
Appellants contend that the original plat of block 207 made in 1924 was in error, in that it showed block 207 to be 84.95 feet further into the Atlantic Ocean than it actually was, and that actually all of said block has not been lost or disappeared by erosion. The record indicates, however, ample evidence and testimony to support the findings of the lower court that the location of block 207 is correctly shown on the plat filed in 1924 and that block 207 has gradually disappeared by erosion.
We hold that the final decree of the chancellor should be affirmed.
Affirmed.
SMITH, C. J., and SHANNON, J., concur.