## SECOND DEPARTMENT, DECEMBER, 1963

## (December 2, 1963)

■ In the Matter of TOWN OF HEMPSTEAD, Appellant-Respondent, v. LEONARD LITTLE et al., Respondents-Appellants, and CHARLES SOLOMON, Respondent.— In a condemnation proceeding by the Town of Hempstead, pursuant to the Administrative Code of Nassau County, to acquire the fee title to certain parcels of real property for beach protection and park purposes, the town and certain claimants cross-appeal as follows from the final decree of the Supreme Court, Nassau County, entered April 7, 1961 upon the court's decisions and opinions after a nonjury trial: (1) The town appeals from so much of the final decree as (a) confirmed the tentative decree; (b) denied its motions to disaffirm such tentative decree; (c) overruled its objections thereto; and (d) fixed the amounts of the final awards to the claimants. (2) The claimants Little appeal from: (a) so much of the final decree as fixed the amounts of the final awards for their damage parcels, numbered 1-A, 5-A, 7-A and 8 (No. 8 being erroneously referred to as 8-A), and as overruled their objections to the tentative decree; (b) intermediate rulings of the court; and (c) an order of the court, dated September 28, 1960, denying their motion to reopen the case. (3) The claimants Scolaro appeal from the entire final decree. Final decree reversed on the law and the facts, without costs, and proceeding remitted to the Special Term for the following purposes: (1) the making of a decree disallowing the claim of the claimants Little as to damage parcels 5-A and 7-A and as to so much of parcel 1-A which was upland as of the vesting date; disallowing the claim of claimants Scolaro as to damage parcel 4-A; and disallowing the claim of claimant Solomon as to damage parcel 6-A; (2) severing the proceeding as to the said claims and parcels; (3) holding a new trial upon the claims of the claimants Little with respect to parcel 8 and with respect to so much

of parcel 1-A as was submerged under water upon the vesting date; and (4) taking any further proceedings not inconsistent herewith. Findings of fact inconsistent herewith are reversed, and new findings are made as indicated herein. Appeal from intermediate rulings and from order, dated September 28, 1960, dismissed as academic. In a previous condemnation proceeding (*Matter of Town of Hempstead* [*Little*], 2 A D 2d 864, mot. for lv. to app. den. 2 N Y 2d 709), the town acquired certain portions of the properties variously owned by these claimants. The portions then taken, considered together, constituted the upland only, to the August, 1952 mean high-water line of the Atlantic Ocean. In such prior proceeding it was adjudicated: (1) that the portions under water had become submerged not by reason of erosion, but because of avulsion; (2) that therefore title thereto remained in the claimants; and (3) that accordingly the claimants were entitled, in addition to direct damages for the upland, to consequential damages with respect to the submerged land. Thus, because of the fact that the submergence had been by avulsion, each set of owners as of the 1952 taking had title to both their upland and to the submerged land, resulting in the unity of title in each set of owners with respect to such upland and submerged land. So long as the situation with respect to the title in the individual owners remained static, if the submerged land once more emerged such owners would then continue to have the title thereto, regardless of the intervening length of time and regardless of whether the land had emerged by reason of art, industry or the forces of nature (*Matter of City of N. Y.* [*Realty Associates*], 256 N. Y. 217; *Matter of City of Buffalo,* 206 N. Y. 319; *Schwarzstein* v. *B. B. Bathing Park,* 203 App. Div. 700). However, when such unity of title was broken by the town's acquisition in the previous proceeding, a new relationship was created between the upland and the submerged land. In that new relationship, although the individual owners retained the fee to their respective submerged lands, the town acquired littoral rights. In other words, the fee title of the individual owners was subject to divestment in the event and to the extent of future alluvion or reliction. In the instant proceeding the taking embraced: (1) all the land that had emerged between the time of the 1952 taking and the June, 1959 mean high-water line, which constituted all of damaged parcels 4-A, 5-A, 6-A and 7-A and part of damage parcel 1-A; (2) so much of the land that claimant Leonard Little had acquired in 1944 as was still submerged in 1959, which consisted of the remainder of parcel 1-A; and (3) the entire 50-foot wide strip that claimant Leonard Little had acquired in 1955, consisting both of upland and submerged land, lying to the east of damage parcel 1-A, and constituting damage parcel 8. However, the land mentioned in item 1 (*supra*) had already accreted to the town as it emerged from the sea, and therefore no awards should have been made with respect thereto. The award to the claimants Little was made upon the theory not only that they were entitled to an award for all their parcels, but also that their parcels 1-A, 5-A and 7-A should be treated together, as a single unit, and that the highest and best use of the unit would be as a bathing beach. In view of our holding that no award should be given for parcels 5-A and 7-A and the upland portion of parcel 1-A, it follows that the award was made on an erroneous theory; that is, that such three parcels should be treated as a single unit and on the basis of the operation of the unit as a bathing beach. As a matter of fact, the Littles' evidence of valuation was based on the premise that all their four damage parcels, including parcel 8, should be treated as a single unit. The Littles presented no proof of land value on the theory that they had lost title to the land which had emerged from the sea. In the interests of justice, they should have an opportunity to present evidence of value limited to parcel 8 and to such part of parcel 1-A as still lay south

of the 1959 mean high-water line, that is, such part thereof as was still submerged. Upon the new trial all issues as to value with respect to those lands should be determined *de novo*. Kleinfeld, Acting P. J., Christ, Hill, Rabin and Hopkins, JJ., concur.